Brenda **STEWART** and April Stewart, Appellants,

v.

Deborah H. **REESE** and Michael S. Reese, Appellees.

No. 05–85–00572–CV.

Court of Appeals of Texas, Dallas.

Sept. 30, 1985.

Rehearing Denied Oct. 28, 1985.

Donald C. Hood, Dallas, for appellants.

Raymond E. North, Virgil E. Rogers, Dallas, for appellees.

Before STEPHENS, WHITHAM and HOWELL, JJ.

WHITHAM, Justice.

Appellees, Michael S. Reese and Deborah H. Reese, brought this action to terminate the parental relationship of a minor, appellant April Stewart, from April's newborn female child. The trial court rendered a decree of termination. Seven days later, April's mother, appellant Brenda Stewart, as next friend for April, filed a motion to vacate and for new trial to which she attached April's revocation of her affidavit of relinquishment. The trial court denied the motion to vacate and for new trial. We conclude that April's revocation of her affidavit of relinquishment executed pursuant to TEX.FAM.CODE ANN. § 15.03(d) (Vernon Supp.1985) does not preclude termination of the parent-child relationship between April and the child. Accordingly, we affirm.

The following is a chronology of significant events:

| | |
|---|---|
| September 1, 1984 | child's birth, April executes "mother's affidavit of relinquishment of parental rights", child delivered to Reeses; |
| September 7, 1984 | Reeses file original petition for termination of parental rights; |
| September 11, 1984 | trial court renders interlocutory termination of parental rights and makes other temporary orders; |

238

| | |
|---|---|
| February 27, 1985 | trial court renders decree of termination; |
| March 5, 1985 | April executes revocation of mother's affidavit of relinquishment of parental rights; |
| March 6, 1985 | Brenda Stewart, as next friend for her minor daughter, April, files motion to vacate decree of termination and moves for a new trial; attached to motion is April's March 5, 1985, revocation of relinquishment of parental rights; |
| April 30, 1985 | trial court denied motion to vacate and motion for new trial. |

The present case centers on the emphasized part of section 15.03(d):

An affidavit of relinquishment of parental rights which designates as the managing conservator of the child the Texas Department of Human Resources or an agency authorized by the Texas Department of Human Resources to place children for adoption is irrevocable. *Any other affidavit of relinquishment is revocable unless it expressly provides that it is irrevocable for a stated period of time not to exceed 60 days after the date of its execution.* (Emphasis added).

April's affidavit did not designate the Texas Department of Human Resources or its authorized agency as managing conservator. Instead, April's affidavit designated the Reeses as managing conservators. As to revocation, April's affidavit provided:

I fully understand that *a lawsuit will be promptly filed* in The Family Court of Dallas County, Texas, a court of competent jurisdiction, *to terminate forever* the parent-child relationship between me and the above named child. Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable for 60 days. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATORS TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY DURING THIS 60-DAY PERIOD. I FURTHER UNDERSTAND THAT MY PARENTAL RIGHTS PROBABLY WILL HAVE ALREADY BEEN ENDED FOR ALL TIME BEFORE THIS 60-DAY PERIOD EXPIRES. *I also understand that, if my parental rights have not been ended within this 60-day period, this affidavit shall remain in full force and effect until I revoke it.* I FULLY UNDERSTAND THAT, AT ANY TIME UNTIL THIS AFFIDAVIT IS REVOKED, MY PARENTAL RIGHTS MAY BE TERMINATED FOR ALL TIME. (Emphasis added).

After expiration of the sixty-day period, April executed on March 5, 1985, a revocation of her affidavit. This revocation was attached to April's motion to vacate and for new trial which was filed March 6, 1985.

Until her motion to vacate and for new trial, April failed to appear in person or by attorney in the proceedings in the trial court. TEX.FAM.CODE ANN. § 15.-03(c)(2) (Vernon Supp.1985) provides for "waiver of process in a suit to terminate the parent-child relationship brought under Section 15.02(1)(K) of this code, or in a suit to terminate joined with a petition for adoption under Section 16.03(b) of this code." April's affidavit contained a waiver of process in any suit to terminate the parent-child relationship between her and the child in this language:

It is in the best interest of my child that this be my last parental act and deed. Not wishing to appear or be cited in the termination suit, I hereby waive the right to issuance, service, and return of all process in any suit to terminate the parent-child relationship between the child and me without further notice to me. I DO NOT WISH TO RECEIVE ANY FURTHER NOTICE WITH RESPECT TO THIS SUIT, INCLUDING NOTICE OF THE ENTRY OF FINAL JUDG-

MENT THEREIN. I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THIS SUIT.

The Reeses contend that the post-sixty-day period for revocation must terminate at some point in time. The Reeses argue that the period ended when the trial court rendered its decree of termination on February 27, 1985. Relying on TEX.R.CIV.P. 329b(d), April contends that the decree of termination was not final on February 27, 1985, because the trial court had plenary power to grant a new trial or to vacate, modify, correct or reform the decree within thirty days after it was signed. We agree with the Reeses that the post-sixty-day period for revocation terminated when the trial court rendered its decree of termination on February 27, 1985.

The trial court rendered its September 11, 1984, interlocutory termination of parental rights within the sixty-day irrevocable period. That order, however, does not clearly terminate the parent-child relationship. The order merely recites that "[t]he Court also finds that termination of the parentchild [sic] relationship between APRIL STEWART, biological mother, and the said unnamed female is in the best interest of the said child." Indeed, with respect to the September 11, 1984, order, the Reeses do not argue that the trial court terminated the parent-child relationship on that date. Rather, the Reeses tell us in their brief "that as opposed to doing nothing [they] took action towards termination." Thus, although some action was taken during the sixty-day irrevocable period, we are unable to say that the trial court terminated the parent-child relationship on September 11, 1984. Therefore, we look to the trial court's February 27, 1985, decree of termination as the first occasion in which a district court *acted* to terminate the parent-child relationship. Consequently, we focus upon the trial court's *act* of termination as critical to whether April may thereafter exercise her right to revoke her affidavit.

April voluntarily executed the affidavit in the presence of two witnesses before a notary. The record is silent as to why April waited until March 5, 1985, to revoke her affidavit. April does tell us in her motion to vacate and for new trial that she "regrets that she has offered to have her child adopted by another family, and regrets any inconvenience that might have been caused to such family. The primary factor in this case is the child's welfare. [April and her mother] believe that it is in the said child's best interest that the child not be deprived of her natural mother's love and attention." April makes no assertion of fraud, misrepresentation, undue influence or overreaching. April does not challenge the validity of her presuit waiver of process. *See Brown v. McLennan County Children's Protective Services*, 627 S.W.2d 390, 393 (Tex.1982). Indeed, the sole issue is whether April's March 5, 1985, revocation attached to her March 6, 1985, motion to vacate and for new trial denied the trial court the right to terminate the parent-child relationship by its February 27, 1985, decree. Furthermore, as we read April's motion to vacate and for new trial, that was the only issue April raised in her motion.

■ We begin the inquiry by determining the authority of the trial court to terminate the parent-child relationship on February 27, 1985. Section 15.02 of the Texas Family Code allows the court to grant a petition terminating the parent-child relationship when the parent is not the petitioner if the court finds that: "(1) the parent has: ... (K) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by Section 15.03 of this code; and in addition, the court further finds that (2) termination is in the best interest of the child." TEX.FAM.CODE ANN. § 15.02 (Vernon Supp.1980–81). *Brown*, 627 S.W.2d at 392. In the present case, April, the parent, was not the petitioner. In its February 27, 1985, decree of termination the trial court found that April had executed her affidavit of relinquishment and that termination of the parent-

child relationship between April and the child is in the best interest of the child. Consequently, we conclude that on February 27, 1985, the trial court had the power and authority to terminate the parent-child relationship. Thus, we reach the question whether April's subsequent revocation of her affidavit applies retroactively.

April's affidavit states that she relinquishes all her parental rights, powers, duties and privileges. April's affidavit acknowledges that a suit will be filed to terminate forever the parent-child relationship. April's affidavit concedes that termination of the parent-child relationship is in the best interest of the child. April's affidavit recognized that it was in the best interest of the child that execution of the affidavit be her last parental act and deed. April also expressed the wish not to be cited in the termination suit and waived the issuance of process in that suit. Important to our inquiry is April's statement in her affidavit that she understood *that at any time until her affidavit is revoked, her parental rights may be terminated for all time.* Thus, April knew that she was required to act to revoke before a court acted to terminate. April failed to act to revoke before a court acted to terminate.

■ This court recognizes, as has the supreme court, the parent-child relationship as a basic civil right due a high degree of protection. *Brown,* 627 S.W.2d at 393. Also, we note the supreme court's following observation in this regard:

> However, when a parent voluntarily terminates this parent-child bond, the best interests of the child become paramount. Once that child has been surrendered to a *licensed agency* for adoption, the safety, education, care and protection of the child, not the contentment or welfare of the parent, is of utmost importance. (Emphasis added).

*Brown,* 627 S.W.2d at 393. In *Brown,* the child had been surrendered to a licensed agency. In the present case, however, the child was surrendered to a non-licensed agency, the Reeses. Where the safety, education, care and protection of a child are

involved, we can see no distinction between a licensed agency placement and a private placement insofar as the contentment or welfare of the parent is concerned. Consequently, we conclude, by modification of the supreme court's language, that:

> [W]hen a parent voluntarily terminates this parent-child bond, the best interests of the child become paramount. Once that child has been surrendered to a *third party,* the safety, education, care and protection of the child, not the contentment or welfare of the parent, is of utmost importance.

In *Brown,* the supreme court went on to observe that:

> Children voluntarily given up in compliance with the Family Code, as was done in this case, cannot be snapped back at the whim of the parent. By these provisions in the Family Code the Legislature was seeking some small amount of security and stability for children placed in this position.

627 S.W.2d at 394. We recognize that the present case involves private placement and that *Brown* involved licensed agency placement, nevertheless, we conclude that there must be some limitation on when children voluntarily given up can be "snapped back at the whim of the parent" after private placement. Surely, by the provisions of the Family Code, the Legislature was seeking some small amount of security and stability for children given up voluntarily for private placement.

■ We conclude, therefore, that when a district court of this state considers and decides the best interest of a child named in an unrevoked affidavit of relinquishment in a private placement, then the moment that court renders a decree of termination society has afforded some small amount of security and stability to a child voluntarily given up in compliance with the Family Code. We decline to deprive the child of that small amount of security and stability while society awaits possible revocations of affidavits thereafter executed and brought forward to support motions for new trial, bills of review and innovative collateral at-

tacks. A court's duty to protect children's interests should not be limited by technical rules. *C___ v. C___*, 534 S.W.2d 359, 361 (Tex.Civ.App.—Dallas 1976, no writ). Thus, we conclude that an affidavit of relinquishment which is revocable under section 15.03(d) is not revocable forever, but ceases to be revocable the moment that a district court renders a decree of termination. We reach this conclusion because once a district court has acted upon an affiant's voluntary request that it take the responsibility for determining the child's best interest, the parent should not be permitted to revoke the responsibility entrusted to the court and undo the court's decree of termination.

■■■ It follows, and we so hold, that a district courts' *act* of rendering a decree of termination ends the parent's right under section 15.03(d) to revoke an affidavit of relinquishment. We hold further, therefore, that a parent's right under section 15.03(d) to revoke an affidavit of relinquishment may not be exercised to set aside a previous decree of termination even if the attempted revocation occurs before expiration of time for filing a motion to vacate or for new trial under rule 329b and the attempted revocation is brought to the attention of the trial court. We hold further that a parent's right under section 15.03(d) to revoke an affidavit of relinquishment may not be exercised to set aside a previous decree of termination even if the attempted revocation occurs during a time when the trial court has plenary power to grant a new trial or to vacate, modify, correct, or reform the decree of termination pursuant to rule 329b(d). We conclude that to hold other than we do in this opinion would permit the child to be "snapped back at the whim of the parent" after a court has addressed and determined the best interest of a child voluntarily given up in compliance with the Family Code.

We express no opinion as to a parent's right to revoke an affidavit of relinquishment under section 15.03(d) on the grounds of fraud, misrepresentation, undue influence or overreaching. Questions involving these issues are not before us in the present case. We believe that this opinion disposes of April's four points of error. All of April's four points of error are overruled. We affirm the judgment of the trial court.