**In the Interest of Kayla Jo McADA, a Minor Child.**

**No. 07–88–0219–CV.**

Court of Appeals of Texas, Amarillo.

Oct. 26, 1989.

Rehearing Denied Dec. 12, 1989.

West Texas Legal Services, Samuel T. Jackson, Amarillo, for appellant.

Harold W. Ochsner, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Annette McAda (McAda), biological mother of Kayla Jo McAda, an infant, appeals from a decree terminating parental rights based upon irrevocable affidavits of relinquishment of parental rights. With four points of error, she contends that (1–2) she effectively revoked her affidavit of relinquishment because the operation of section 15.03(d), Texas Family Code, making her affidavit of relinquishment irrevocable for sixty days, violated her constitutional due process and equal protection rights; (3) another revocation filed before entry of final judgment deprived the trial court of jurisdiction; and (4) the court denied her due process by prematurely concluding the termination hearing. We will overrule the points and affirm.

This litigation had its inception in McAda's 16 November 1987 execution of an affidavit of relinquishment of parental rights, irrevocable for sixty days, wherein she appointed Austin Watt Brown and Kathy Jo Brown, husband and wife, the managing conservators of her three and one-half month old daughter, waived service of process, and further stated that:

> I have been informed of my parental rights, powers, duties, and privileges, and I freely and voluntarily give and relinquish to the above-named managing conservators all of my parental rights, powers, duties, and privileges.

\* \* \* \* \* \*

Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this Affidavit. With that in mind, I hereby declare that this Affidavit of Relinquishment of Parental Rights is and shall be irrevocable for 60 days. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT IN ANY WAY DURING THIS 60–DAY PERIOD. I FURTHER UNDERSTAND THAT MY PARENTAL RIGHTS PROBABLY WILL HAVE ALREADY BEEN ENDED FOR ALL TIME BEFORE THIS 60–DAY PERIOD EXPIRES. I also understand that, if my parental rights have not been ended within this 60–day period, this affidavit shall remain in full force and effect until I revoke it. I FULLY UNDERSTAND THAT, AT ANY TIME UNTIL THIS AFFIDAVIT IS REVOKED, MY PARENTAL RIGHTS MAY BE TERMINATED FOR ALL TIME.

\* \* \* \* \* \*

As I sign this Affidavit of Relinquishment of Parental Rights, I know that AUSTIN WATT BROWN and KATHY JO BROWN, in accepting my child for adoptive placement and assuming responsibility for my child, are relying on my promise that I will not attempt to reclaim my child. With this in mind, I declare that I fully understand the meaning of this affidavit of relinquishment and the finality of my action in signing it, and, understanding all this, I am signing freely, voluntarily, and with the firm conviction that this decision is the best available alternative for my child.

I am signing this affidavit today because I want to sign it and not because AUSTIN WATT BROWN and KATHY JO BROWN or any other person or persons want me to sign it.

\* \* \* \* \* \*

BECAUSE I REALIZE HOW IMPORTANT THIS DECISION IS FOR THE FUTURE OF MY CHILD, I HAVE PUT MY INITIALS BESIDE EVERY LINE OF THIS PARAGRAPH SO THAT IT WILL ALWAYS BE UNDERSTOOD THAT I HAVE READ THIS AFFIDAVIT OF RELINQUISHMENT, UNDERSTAND IT, AND DESIRE TO SIGN IT.

The next day, the infant's father, Britain McAda, executed an identical affidavit. He is not a party to these proceedings.

On the day that she signed her affidavit, McAda delivered the child to the Browns and, thereafter, a chronology of significant events reveals the following:

| | |
|---|---|
| 19 November 1987 | the Browns file an original petition for termination of parental rights and adoption; |
| 8 January 1988 | McAda files a revocation of affidavit of relinquishment of parental rights and an answer; |
| 14 January 1988 | McAda files a motion to dismiss; |
| 14–15 January 1988 | hearing on termination and adoption; court orally pronounces decree of termination, appoints Browns managing conservators, and reserves ruling on issue of adoption pending appeal; |
| 19 January 1988 | McAda files second revocation of affidavit of relinquishment of parental rights; |
| 20 January 1988 | McAda files motion to vacate judgment or for new trial; |
| 21 January 1988 | trial court signs and files decree terminating parental rights; |
| 14 March 1988 | court signs order denying McAda's motion to vacate or for new trial; |
| 21 March 1988 | McAda's motion for leave to file petition for writ of mandamus and prohibition in court of appeals overruled; |
| 19 April 1988 | trial court filed amended findings of fact and conclusions of law; |
| 20 April 1988 | McAda's motion for leave to file petition for writ of mandamus and prohibition in Supreme Court overruled; |
| 18 May 1988 | McAda's attempted appeal from interlocutory judgment of termination dismissed for want of jurisdiction. No. 07–88–0113–CV; |

27 July 1988 trial court filed order severing termination from adoption.

Following the 27 July 1988 finalization of the decree terminating parental rights, McAda perfected this appeal.

 McAda's argument under her first two points of error focuses primarily on section 15.03(d),[1] and secondarily on its interplay with section 16.031,[2] of the Texas Family Code Annotated (Vernon 1986). She contends the statutes result in a violation of substantive due process and the guarantees of equal protection found in Section 1 of the Fourteenth Amendment to the Constitution of the United States and in Article 1, Sections 3 and 19 of the Texas Constitution. These provisions, she reasons, evince a statutory scheme to prevent a parent from revoking her consent to termination, and then to adoption, if the prospective adoptive parents act within the period of irrevocability. Such a scheme, she says, infringes upon the parent's fundamental liberty interest in child-rearing decisions by making it impossible for a parent to reverse the decision to relinquish her child to another. Therefore, she concludes, the unconstitutionality of the statutes rendered effective her 8 January 1988 revocation of her affidavit of relinquishment, thereby entitling her to a dismissal of the action or, alternatively, to a vacation of the judgment. We are not in accord.

Whether these sections of the Family Code are viewed as protective of parental rights by requiring irrevocability to be expressly stated and limited to no more than 60 days, or as detrimental to such rights by making provisions for a period of irrevocability and termination and adoption within that period, they do not rise to the level of active interference by the state with the integrity of the family. What state action exists is extremely circumspect of parental rights, merely giving effect to the will of the parent as expressed in the voluntarily executed affidavit of relinquishment. There is no infringement upon a parent's liberty interest in child-rearing decisions where there is no attempt to influence the decision and the sole state action consists of implementing the parent's clearly expressed will.

 Parental consent to adoption in the private adoption setting is revocable at any time before the court terminates the parent-child relationship. Tex.Fam.Code Ann. section 15.03(d) (Vernon 1986); *Wilde v. Buchanan*, 157 Tex. 606, 305 S.W.2d 778 (1957). The irrevocability clause in the affidavit of relinquishment is a waiver of such right to revoke. Even constitutional rights of the highest order subject to the most jealous protection of the courts may be waived. The test of such waiver is that it be voluntary and knowing, with sufficient awareness of relevant circumstances and likely consequences. *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185–87, 92 S.Ct. 775, 782–83, 31 L.Ed.2d 124 (1972) (cognovit waiver of notice and hearing); *Brady v. U.S.*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970) (validity of guilty plea). The waiver of revocability under review clearly exhibits the required attributes of voluntariness, knowledge, and awareness of the circumstances and likely consequences. McAda does not allege any defect in these areas, expressly acknowledging in the affidavit the likelihood of suit being filed to terminate her parental rights and the termination of such rights within the period of irrevocability, as well as the finality of such action. Therefore, in the

1. Section 15.03(d) of the Texas Family Code Annotated (Vernon 1986) states:

 (d) An affidavit of relinquishment of parental rights which designates as the managing conservator of the child the Texas Department of Human Resources or an agency authorized by the Texas Department of Human Services to place children for adoption is irrevocable. Any other affidavit of relinquishment is revocable unless it expressly provides that it is irrevocable for a stated period of time not to exceed 60 days after the date of its execution.

2. Section 16.031 of the Texas Family Code Annotated (Vernon 1986) reads in pertinent part:

 (b) The court shall set the date for the hearing on the adoption at a time not later than 60 days, nor earlier than 40 days, after the date on which the investigator is appointed. For good cause shown, the court may set the hearing at any time that provides adequate time for filing the report of the study.

absence of state grounds of fraud, misrepresentation, overreaching, or the like, there is no basis upon which to invalidate the affidavit or its waiver of revocability. *Catholic Charities of Diocese of Galveston v. Harper*, 161 Tex. 21, 337 S.W.2d 111, 114–15 (1960).

By signing an irrevocable affidavit of relinquishment, McAda clearly demonstrated her intent to dissolve the bond between parent and child at least for the sixty-day period. At this point, the State, acting through section 16.031(b) of the Family Code, must step in to advance its legitimate and compelling interest in the safety, education, care and protection of the child. "[W]hen a parent voluntarily terminates this parent-child bond, the best interests of the child become paramount." *Brown v. McLennan County, etc.*, 627 S.W.2d 390, 393 (Tex.1982).

The same consideration for the rights and needs of the child apply in both the private and the agency adoption arenas. The State acts to protect the integrity of the adoption process by which the child's rights to support, management, and care may be re-established in relation to an adoptive parent, *see Lutheran Social Service, Inc. v. Farris*, 483 S.W.2d 693, 695 (Tex.Civ.App.—Austin 1972, writ ref'd n.r. e.), and to provide the child at least minimal stability during this chaotic period. *Brown v. McLennan County, etc.*, 627 S.W.2d at 393–94. "The issue involved is the rights of the natural parent v. the rights of the child." *Catholic Charities of Diocese of Galveston v. Harper*, 337 S.W.2d at 114. Due process does not require the child's rights be sacrificed to preserve rights which the parent has waived. The legitimate and compelling state interest in protecting the rights of a child in this situation is advanced merely by giving effect to the express will of the parent. Thus, far from being capricious or overbroad, as McAda charges, the section 15.03(d) statute is precisely tailored to advance the State's compelling interest without any intrusion on the parent's rights.

■ McAda further argues that the statutory scheme creates a discriminatory classification in violation of her equal protection guaranties by allowing a managing conservator to withdraw consent to an adoption "at any time before an order granting the adoption of the child is entered," but preventing a parent who has signed an irrevocable affidavit of relinquishment from withdrawing consent during the period of irrevocability, not to exceed 60 days. *See* sections 15.03(d), 16.-05(a) and 16.06 of the Texas Family Code Annotated (Vernon 1986). This argument is based on a misapprehension of adoption law. In a private adoption proceeding based upon the parents' voluntary relinquishment and consent to the adoption, a parent has the right to withdraw consent at any time before the court acts on the petition for adoption. *Hendricks v. Curry*, 401 S.W.2d 796, 800 (Tex.1966). The managing conservator's consent is the corresponding requirement in the field of agency adoption. It is based upon and coextensive with the requirement of parental consent in private adoptions and is rooted in the theory that an adoption agency, having received the parents' consent to the adoption process, now "stands in loco parentis to the child and is clothed with the authority to give or withhold the consent necessary." *Lutheran Social Service, Inc. v. Farris*, 483 S.W.2d at 695 (quoting from *Catholic Charities of Diocese of Galveston v. Harper*, 337 S.W.2d at 112–113). In the private adoption area, the only parents who are prevented from revoking their consent are those who have expressly waived such right to revoke in their voluntarily executed irrevocable affidavit of relinquishment. Such parents are not similarly situated with those who have reserved the right of revocation, making disparate treatment justified. *See Western and Southern Life Ins. Co. v. State Board of Equalization*, 451 U.S. 648, 656–57, 101 S.Ct. 2070, 2076–77, 68 L.Ed.2d 514 (1981); *Rinaldi v. Yeager*, 384 U.S. 305, 309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966). McAda's first two points of error are overruled.

■ By her third point of error, McAda contends that by her 19 January 1988 filing, she effectively revoked her affidavit

of relinquishment after the period of irrevocability ended and before the court's termination decree became final by severance from the adoption suit, thus depriving the trial court of jurisdiction. The issue of parental consent contained in the affidavit of relinquishment in a voluntary adoption proceeding goes to the jurisdiction of the court. Without such consent, the court's only proper action is to dismiss the cause. *Hendricks v. Curry*, 401 S.W.2d at 802. However, the affidavit of relinquishment and the consent it contains cease to be revocable the moment the court terminates the parent-child relationship by decree. *Stewart v. Reese*, 698 S.W.2d 236, 240 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). The court's oral rendition of the decree, not the written recitation, terminates the parent-child relationship. *In Interest of E.S.M.*, 550 S.W.2d 749, 752 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). The reduction of the decree to writing and its signing do not affect validity, but fix the time for the beginning of the appellate process. Tex.R.Civ.P. 306a. Similarly, the fact that the judgment was interlocutory until severed from the suit for adoption does not affect its validity; it determines appealability. *Teer v. Duddlesten*, 664 S.W.2d 702, 703–04 (Tex.1984).

The court's decree terminating McAda's parental rights was rendered within the 60–day period of irrevocability of her affidavit of relinquishment. There was no time before the court's decree at which McAda could revoke her consent, and her attempt to revoke after the oral decree was futile because the parent-child relationship had been terminated. The third point of error is overruled.

■ With her fourth point of error, McAda claims procedural due process was not fulfilled in the timing of the hearing and in

its termination. She attacks the date of the hearing on the grounds that it afforded her insufficient opportunity to prepare for the suit, she was not provided a social study within the time period recited in section 11.12(c) [3] of the Texas Family Code, and the hearing was not held within the time period propounded in section 16.-031(b) [4] of the Texas Family Code.

The affidavit of relinquishment executed by McAda included a pre-suit waiver of citation. Such a waiver is valid and does not constitute a violation of due process rights. *Brown v. McLennan County, etc.*, 627 S.W.2d at 393. The waiver contained an acknowledgement that proceedings likely would be commenced and completed within the time period in which they were actually performed, and waived all notice and service. Appellant cannot now complain that the timely character of such proceedings violated due process rights which she has waived.

■ McAda was not furnished a copy of the social study before the day of trial. After executing the affidavit of relinquishment, McAda was still a party-in-interest to the suit terminating the parent-child relationship. *Brown v. McLennan County, etc.*, 627 S.W.2d at 392. However, she could not be a party to the suit for adoption because that suit did not properly commence until her parental rights were terminated. *Durham v. Barrow*, 600 S.W.2d 756, 761 (Tex.1980). Once McAda's parental rights were terminated by court order, she had no further justiciable interest in the child, *Glover v. Moore*, 536 S.W.2d 78, 80 (Tex.Civ.App.—Eastland 1976, no writ), and she was not a party to the suit for adoption governed by section 11.12(c) of the Texas Family Code. No social study is required for the parent-child termination proceeding to which she was a party. *Ma-*

---

**3.** Section 11.12(c) of the Texas Family Code Annotated (Vernon 1986) provides:

(c) The agency or person making the social study shall file its findings and conclusions with the court on a date set by the court. The report shall be made a part of the record of the suit; however, the disclosure of its contents to the jury is subject to the rules of evidence. In a contested case, the agency or person making the social study shall furnish copies of the study to the attorneys for the parties before the earlier of:

(1) the seventh day after the day the social study is completed; or

(2) the fifth day before the date of commencement of the trial.

**4.** For the text of section 16.031(b) of the Texas Family Code see note 2 *infra*.

*gallon v. State,* 523 S.W.2d 477, 480 (Tex. Civ.App.—Houston [1st Dist.] 1975, no writ). Therefore, there is no reason why McAda should have been provided a copy of the social study nor could its absence be a denial of due process.

McAda does not contend, and the record does not show, that her objection based on section 16.031(b) of the Texas Family Code was raised in the trial court and, therefore, it cannot be raised for the first time on appeal to charge the court with error. *Line Enterprises v. Hooks & Matteson,* 659 S.W.2d 113, 118 (Tex.App.—Amarillo 1983, no writ); *Kaufman Northwest, Inc. v. Bi–Stone Fuel Co.,* 529 S.W.2d 281, 285 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r. e.). However, we note the hearing to which section 16.031(b) refers is that hearing in connection with the suit for adoption. Since McAda was not a party to the adoption suit, any error that may have been committed in its conduct is not a proper subject for her appeal. *Continental Cas. Co. v. Huizar,* 740 S.W.2d 429, 430 (Tex. 1987).

Lastly, McAda contends the trial court committed a gross abuse of discretion and denied her due process when it ended the hearing before she rested her case. Action involving the use of discretion in the lower court is presumed correct. *Glenn v. Dallas County Bois D'Arc Island Levee Dist.,* 114 Tex. 325, 268 S.W. 452, 453 (1925). The burden of proof rests on the party attacking the trial court's action or ruling. *Lutheran Social Service, Inc. v. Meyers,* 460 S.W.2d 887, 889 (Tex. 1970). When the court manifested its intent to end the hearing, McAda's counsel requested and received the court's permission to make a bill of exceptions. Such permission was reiterated at the close of the proceeding; however, no bill of exceptions appears in the record. "The rule is that an objection to the exclusion of testimony cannot be considered on appeal if the record does not show what the testimony would have been." *Rose v. Allied Finance Company of Oak Forest,* 487 S.W.2d 861, 862 (Tex.Civ.App.—Waco 1972, no writ). Without a showing of what the excluded testimony would have been, nothing is presented for review. The fourth point of error is overruled.

The judgment is affirmed.