

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00366-CV

IN THE INTEREST OF D.L.S.,
A CHILD

----------

### FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Father, an inmate serving a life sentence and appearing here pro se, appeals the trial court's order terminating his parental rights to his daughter D.L.S. as part of a private termination and adoption suit. In nine points, Father raises due process and equal protection challenges and argues that the evidence is insufficient to support the trial court's order terminating his parental rights to

---

[1]*See* Tex. R. App. P. 47.4.

D.L.S. Neither Mother nor D.L.S.'s adoptive Father filed a brief with this court. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Father married Mother in May 2000, and D.L.S. was born in October 2000. Mother separated from Father in January 2002 because of Father's drinking and because she felt that she and D.L.S. were in danger. Mother and Father divorced in May 2003, and the final divorce decree granted Father supervised visitation only because he had failed to complete an alcohol evaluation and a social study. Father last saw D.L.S. in 2002 or 2003 and made only one child support payment.

In August 2005, Father was imprisoned on murder charges. He was convicted and sentenced to life in prison.

In December 2007, Mother married Brian. Thereafter, in 2009, Mother and Brian filed a private suit to terminate Father's parental rights to D.L.S. and to allow Brian to adopt D.L.S.

Father answered and requested appointed counsel and a bench warrant. The trial court denied both requests. The trial court, however, wrote a letter to Father explaining,

> Please be advised that the law does not allow me to appoint you counsel in this type of case. I will, however, make the Court available to you to present your case. The Termination-Adoption Hearing has been set for a final hearing on September 27, 2010 at 4:00 P.M. You may submit your testimony by sworn affidavits prior to that time. In the alternative, if allowed by the Prison authorities where you are incarcerated and if you can arrange it, I will allow you

2

to appear by telephone conference during the hearing. Notify the Court of your intentions. Regardless, a final hearing in this matter will be held September 27, 2010 at 4:00 P.M.

On the day of the hearing, Father filed a motion for continuance, requesting a two-year continuance "so that he may adequately represent himself"; a motion for reconsideration of his request for a bench warrant; a motion to dismiss, arguing that the required service of notice was not affected on him; and an affidavit of Father's testimony. The trial court waited until 4:15 P.M. and stated on the record that it had received no communication indicating that Father had made arrangements for a telephone conference. Father's affidavit was read into the record:

> [T]he testimony Respondent [Father] would give at the hearing would be as follows: Respondent has never intentionally exposed the child to any influence that would endanger the physical or emotional well-being of his child, number one.
>
> Number two, Respondent loves and cares for his child and wishes to be involved in the care of his child in the future and assist in the upbringing of his child.

The trial court then heard testimony from the attorney ad litem for D.L.S., from Mother, and from Brian. The trial court thereafter found by clear and convincing evidence that (1) Father had voluntarily left the child alone or in possession of another without providing adequate support of the child and remained away for a period of at least six months, (2) Father had knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from

3

the date the petition was filed, and (3) termination of the parent-child relationship between Father and D.L.S. was in D.L.S.'s best interest. The trial court heard additional testimony from Mother and Brian and then granted the adoption and name change.

Following the entry of the judgment, Father filed a request for findings of fact and conclusions of law, a notice of appeal, a motion to recuse the trial judge, and a motion for new trial. Father now raises nine points on appeal.

### III. LACK OF NOTICE ARGUMENT IS MOOT

In his first point, Father argues that the required service under Texas Rule of Civil Procedure 103 was not affected on him because he was not properly notified of the suit by registered mail. The record contains a copy of the citation, and the return portion is blank. However, Father acknowledges that this may be a moot point because he filed an answer, which constituted an appearance in this case. *See* Tex. R. Civ. P. 121 (stating that "[a]n answer shall constitute an appearance of the defendant so as to dispense with the necessity for the issuance or service of citation upon him"). We therefore overrule Father's first point as moot.[2]

---

[2]Father also urges this court to hold that Texas Rule of Civil Procedure 121 is unconstitutional as "a loophole of due process" because a piece of paper, which conveys simple thoughts, cannot replace a physical appearance. We decline Father's invitation to hold that such rule is unconstitutional.

4

## IV. FATHER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS WERE NOT VIOLATED

In his third, fourth, fifth, sixth, seventh, and ninth points, Father argues that his constitutional rights to due process and equal protection were violated. In his sixth and seventh points, Father also argues that the trial court abused its discretion by denying his motion for bench warrant and his request for appointed counsel. We will address each of Father's arguments below.

### A. Denied Request for Appointed Counsel

In his seventh point, Father argues that the trial court abused its discretion by denying his request for appointed counsel and that his due process and equal protection rights were violated by the denial of his motion for appointed counsel. As set forth above, the trial court explained that Father was not entitled to an appointed attorney. Texas Family Code section 107.021(a) provides only for *discretionary* appointments in private termination suits. *See* Tex. Fam. Code Ann. § 107.021(a) (West 2008). Because appointed counsel is not mandatory in a private termination suit, we hold that the trial court did not abuse its discretion by not appointing counsel for Father. *See In re J.C.*, 250 S.W.3d 486, 489 (Tex. App.—Fort Worth 2008, pet. denied) (holding that because mother's parental rights were terminated pursuant to a private termination suit, she possessed no mandatory statutory right to appointed counsel), *cert. denied sub nom. Rhine v. Deaton*, 130 S. Ct. 1281 (2010). Accordingly, we also hold that Father's due

process and equal protection rights were not violated. We overrule Father's seventh point.

## B. Denied Request for Bench Warrant

In his sixth point, Father argues that the trial court abused its discretion by denying his motion for bench warrant without a quantifiable reason, that his due process and equal protection rights were violated by the denial of the bench warrant, and that his due process rights were violated by the trial judge's failure to set up the requested telephone conference.

Texas courts consider several factors when deciding whether to grant a prisoner's request for a bench warrant, including (1) the expense and inconvenience of transporting the inmate to court; (2) whether the inmate presents a security risk to the court and public; (3) whether the inmate has substantial claims; (4) whether the proceeding can reasonably be delayed until the inmate's release; (5) whether the inmate "can and will offer admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone, or some other means"; (6) whether the inmate's "presence is important in judging his demeanor and credibility"; (7) whether the case will be tried before a jury or to the court; and (8) the inmate's probability of success on the merits. *In re Z.L.T.*, 124 S.W.3d 163, 165–66 (Tex. 2003) (explaining that in recognizing these factors, Texas courts have followed *Stone v. Morris*, 546 F.2d 730, 735–36 (7th Cir. 1976)). "In general, our rules place the burden on litigants to identify with sufficient specificity the grounds for a ruling they seek. A litigant's

status as an inmate does not alter that burden." *Id.* at 166 (citations omitted). An inmate who claims a constitutional right to access must explain "why his appearance in court [is] necessary to preserve his constitutional right[.]" *Id*. The trial court does not have a duty to independently inquire into "relevant facts not provided by the moving party." *Id*. Rather, the inmate who seeks a bench warrant "must justify the need for his presence." *Id*.

Here, Father's motion for bench warrant states that he "desires to present testimony in his own behalf, especially concerning his desire to care, love and provide for his natural child." Because Father's motion does not recite facts supporting the *Stone* factors, we hold that the trial court did not abuse its discretion by denying his request. *See In re C.M.R.*, No. 02-07-00394-CV, 2008 WL 4963510, at *3 (Tex. App.—Fort Worth Nov. 20, 2008, no pet.) (mem. op.); *see also Ringer v. Kimball*, 274 S.W.3d 865, 868 (Tex. App.—Fort Worth 2008, no pet.) (holding that trial court did not abuse its discretion in implicitly denying prisoner's request for a bench warrant because prisoner's bench warrant motion contained no information by which trial court could assess the necessity of his appearance at pretrial hearing).

Moreover, when a trial court denies a request for a bench warrant and does not allow an inmate to appear in person, it should afford the inmate the opportunity to proceed by affidavit, deposition, telephone, or other means. *In re D.D.J.*, 136 S.W.3d 305, 313–14 (Tex. App.—Fort Worth 2004, no pet.). The record reveals that the trial court offered Father the opportunity to participate via

7

telephone but that Father did not notify the trial court of his intention to participate in the trial by that means. The trial court also allowed Father to submit an affidavit, and Father participated in the trial via his affidavit, which the trial court read on the record. Because Father participated in the trial by affidavit, we hold that Father's due process and equal protection rights were not violated by the denial of his motion for bench warrant and that his due process rights were not violated by the trial judge's alleged failure to set up the requested telephone conference, which was Father's responsibility. We overrule Father's sixth issue.

**C. Social Study Evaluator's Failure to Personally Interview Father or to Provide Father With a Copy of the Social Study**

In his third point, Father argues that his due process and equal protection rights were violated by the social study evaluator's failure to interview each party to the suit, specifically Father. *See* Tex. Fam. Code Ann. § 107.0514(a)(1) (West 2008) (requiring social study to include personal interview of each party to the suit). Father also argues that the trial court "oversaw this failure and allowed it to happen." In his fourth point, Father argues that his due process and equal protection rights were violated by the social study evaluator's failure to provide Father with a copy of the social study. *See id.* § 107.055(b) (West 2008) (requiring service of social study on attorneys for parties). Father states that he did not become aware of the social study until after he filed his notice of appeal and argues that the trial court "oversaw this failure and allowed it to happen."

A social study may be ordered in adoption proceedings or proceedings involving conservatorship of a child or possession of or access to a child. *See id*. § 107.0501(1) (West 2008). A special type of social study, a preadoptive social study, is required when termination of parental rights is sought and a person other than the parent may be appointed managing conservator of the child. *See id.* § 107.0519(c)(1), (2) (West 2008). By statute, a preadoptive social study requires an interview only of "each party . . . who requests termination of the parent-child relationship or an adoption." *Id.* § 107.0519(b) (West 2008).

Here, the trial court ordered a preadoptive social study in connection with D.L.S.'s adoption by her stepfather. The trial court's order specifically states that a "preadopotive social study" is ordered. Thus, because Father was not a party requesting termination or adoption, the statute did not require that he be interviewed. *Id*. We overrule Father's third point.

A preadoptive social study is ordered because a party is seeking to adopt a child. *See id.* § 107.0519. An adoption proceeding does not properly commence until at least one of the biological parent's rights are terminated. *See In re McAda*, 780 S.W.2d 307, 312 (Tex. App.—Amarillo 1989, writ denied). Thus, the adoption proceeding here did not commence until Father's rights had been terminated, and after Father's parental rights were terminated he possessed no further justiciable interest in D.L.S. *See id*. Because Father's rights had been terminated, he was not a party to the adoption proceeding and was therefore not entitled to a copy of the preadoptive social study; the failure to

9

provide him with a copy cannot constitute a denial of due process or equal protection. *See id.* We overrule Father's fourth point.

### D. Attorney Ad Litem's[3] Failure to Interview Father and Serve Documents on Him

In his fifth point, Father argues that the attorney ad litem failed to interview him and failed to serve documents on him. Father argues that these failures violated his due process and equal protection rights and resulted in an unfair trial. Father also argues that the trial court "oversaw this failure and allowed it to happen." Father urges this court to discipline the attorney ad litem and Judge Havercamp.

The record before us contains no written or oral objections or complaints concerning the attorney ad litem or Judge Havercamp's rulings with respect to the attorney ad litem. Because no objections were made, no error is preserved for review. *See* Tex. R. App. P. 33.1(a).[4] We therefore decline Father's request

---

[3]The trial court appointed an attorney ad litem to represent D.L.S.'s interests.

[4]Even if Father's arguments were preserved, the record does not support them. No evidence exists that the attorney ad litem failed to interview Father. At the termination trial, the trial court asked the attorney ad litem if he had ample opportunity to investigate the matter, and he responded, "Yes, Your Honor." He also responded that he had received "quite a bit" of correspondence from Father and that he was ready to proceed. Thus, the record indicates that the attorney ad litem obtained information from Father via written correspondence. Similarly, the clerk's record contains a copy of the attorney ad litem's original answer; it contains a certificate of service stating that the answer was served on "each attorney of record or party in accordance with the Texas Rules of Civil Procedure on August 3, 2010." No evidence exists that Father was not sent a copy of the attorney ad litem's answer. To the extent that Father argues that the attorney ad

10

to discipline the attorney ad litem and Judge Havercamp, and we overrule Father's fifth point.

## E.     Cumulative Effect of Errors Shows Bias

In his ninth point, Father argues that the trial court judge and the 235th District Court have violated Father's due process and equal protection rights on multiple occasions, "resulting in an extremely biased cause." Father reiterates his above complaints and also argues that the trial court's rulings on his motions and the alleged disappearance from the record of four requests constitutes "[e]gregious prejudices." We have analyzed each of Father's due process and equal protection arguments above and have found no violations.

Moreover, the record does not support Father's claims for bias or prejudice. The Texas Supreme Court has stated,

> '[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion,' and opinions the judge forms during a trial do not necessitate recusal 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994)). Furthermore, expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality. *Id.* at 240. "A judge's ordinary efforts at courtroom

---

litem was biased against him, we hold that there is no evidence in the record to support Father's bias argument.

11

administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* (quoting *Liteky*, 510 U.S. at 556, 114 S. Ct. at 1157).

Here, the record does not show bias or support recusal. The record establishes that Judge Havercamp made every effort to accommodate Father, who is in prison, by offering to let him participate in the trial by telephone if he made the arrangements with the prison officials. We hold that Judge Havercamp did not demonstrate any bias that would support recusal. *See Estate of Connally*, No. 02-07-00412-CV, 2008 WL 4531664, at *4 (Tex. App.—Fort Worth Oct. 9, 2008, no pet.) (mem. op.) (holding that, after reviewing the record, judge did not demonstrate a bias). We overrule Father's ninth point.

## V. RECORD SUPPORTS TERMINATION

In his eighth point, Father argues that the trial court did not by clear and convincing evidence "fulfill any of the two-pronged requirements to terminate parental rights." Specifically, Father argues that the evidence presented in the reporter's record is insufficient to support the trial court's findings under family code section 161.001(1) and (2) because he did not "voluntarily" leave his child or fail to support his child, because he did not "knowingly" engage in criminal conduct, and because the best interest of D.L.S. "can only be achieved through the preservation of their natural parent-child relationship."

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could

reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that Father violated subsections (C) and (Q) of section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not

13

have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

Here, the eighteen-page reporter's record details that Father last saw D.L.S.—who was almost ten years old at the time of trial—in 2002 or 2003, when D.L.S. was two or three years old, and that Father had made only one child support payment. The 104-page clerk's record contains evidence that in 2007, Father was convicted of murder and sentenced to life in prison.[5] There was no evidence that D.L.S. had a relationship with Father; instead, the record contained evidence that D.L.S.'s stepfather acted as D.L.S.'s father.

After reviewing the record under the required standards of review,[6] we hold that the evidence is legally and factually sufficient to support the trial court's findings that (1) Father had voluntarily left D.L.S. alone or in possession of another without providing adequate support of the child and remained away for a period of at least six months, (2) Father had knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for D.L.S. for not less than two years from the

---

[5]We affirmed Father's criminal conviction for murder in a prior appeal to this court. We omit the citation and style of the case to comply with Texas Rule of Appellate Procedure 9.8(b)(2). *See* Tex. R. App. P. 9.8(b)(2).

[6]Father attempts to offer evidence attached to his brief that is not in the appellate record. *See generally* Tex. R. App. P. 34.1 (stating that appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record).

date the petition was filed, and (3) termination of the parent-child relationship between Father and D.L.S. was in D.L.S.'s best interest. We overrule Father's eighth point.

## VI. TEXAS FAMILY CODE SECTION 161.001(1)(Q) IS NOT UNCONSTITUTIONAL

In his second point, Father argues that Texas Family Code section 161.001(1)(Q)—authorizing termination of a parent's rights when a parent knowingly engages in criminal conduct that results in the parent's conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the termination petition—is unconstitutional as violative of article I, section 21 of the Texas constitution. But Father's argument appears to challenge the trial court's ability to order D.L.S.'s last name to be changed.

Article I, section 21 of the Texas constitution states, "No conviction shall work corruption of blood, or forfeiture of estate, and the estates of those who destroy their own lives shall descend or vest as in case of natural death." Tex. Const. art. I, § 21. The provision means that a person may not be denied the right to inherit on the basis of a criminal conviction. Tex. Att'y Gen. Op. No. GA-0632 (2008). Father does not challenge family code section 162.016, which deals with adoption orders and allows the name of the child to be changed, nor does he challenge any of the inheritance statutes found in the Texas Probate Code. Because section 161.001(1)(Q) is solely a ground for the first prong of termination, because a best interest finding is also required for a parent's rights

to be terminated, and because section 161.001(1)(Q) does not by itself result in a name change or affect one's inheritance rights, we decline to hold section 161.001(1)(Q) unconstitutional as violating article I, section 21 of the Texas constitution.[7] We overrule Father's second point.

## VII. CONCLUSION

Having overruled all of Father's points, we affirm the trial court's judgment terminating his parental rights to D.L.S., granting Brian's adoption of D.L.S., and granting the name change from D.L.S. to D.L.B.

SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED: July 21, 2011

---

[7]Moreover, to the extent that Father argues that subsection Q violates double jeopardy, the Texas Supreme Court has held that termination of parental rights under subsection Q does not constitute an additional punishment for prior criminal conduct because subsection Q focuses on the parent's future imprisonment and inability to care for the child, not the criminal conduct committed by the parent in the past. *See In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003).