# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00886-CV

**Angelica Mitchell Moore and Kevin Alexander Moore, Appellants**

**v.**

**Donna M. Brown and Alvin Benard Brown, Appellees**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 235,235-E, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## O P I N I O N

On the second day after the birth of their third child, appellants Angelica Mitchell Moore and husband Kevin Alexander Moore executed affidavits relinquishing their parental rights to the infant and designating as managing conservators appellees Donna M. Brown and husband Alvin Benard Brown.[1] Relying on these affidavits, the Browns obtained an order from the district court terminating the Moores' parental rights and, subsequently, an order granting the Browns' adoption of the child.

In the meantime, however, the Moores initiated attempts to revoke their relinquishment affidavits and reassert their parental rights, but they did not appear at the termination hearing or timely perfect an appeal from the termination order. Ultimately, the Moores sought to challenge both the termination order and adoption order via bill of review and purported attack on

---

[1] The spelling of Ms. Moore's first name appears in the record as both "Angelica" and "Anjelica." Because it appears from the record and the Moores' appellate briefing that Ms. Moore prefers "Angelica," we will use that spelling as well.

a "void" order. Following an evidentiary hearing, the district court denied the Moores relief on their claims. The Moores now appeal that judgment to this Court.

Concluding that the Moores' claims are barred by requirements of the Texas Family Code and Texas civil procedure intended to ensure the finality of the termination and adoption orders, and that the Moores have not shown any constitutional deprivation from the enforcement of those requirements, we will affirm the district court's judgment.

## BACKGROUND

M.K.B., the third child born to the Moores, arrived on March 8, 2009, in the Commonwealth of Virginia, where the Moores reside. Among M.K.B.'s early visitors was appellee Donna Brown, a distant cousin and close friend of Kevin Moore's mother, and whose relationship with Kevin was such that he had termed Donna his "aunt" during his youth.[2] At the time of M.K.B.'s birth, Donna and her husband, Alvin, resided in Harker Heights, Bell County, Texas, near Fort Hood, where Alvin's U.S. military unit was based—though he was deployed to Iraq—and Donna also was employed.

The parties agree that, in advance of M.K.B.'s birth, the Moores had discussed giving up the child to the Browns for adoption and, in fact, agreed that M.K.B. would live with the Browns following birth. It is likewise undisputed that, following birth, the Moores consented to giving the child the surname "Brown" on the child's birth certificate (hence the initials "M.K.B." rather than "M.K.M.") and executed several documents granting the Browns custody and laying legal groundwork for an adoption.

---

[2] Given the parties' common surnames, we will use first names as necessary to avoid confusion.

2

On March 10, 2009, the Browns, as "prospective adoptive parents," and the Moores, as "birth parents of the child to be known as [M.K.B.]," executed before a notary an "Entrustment Agreement and Power of Attorney" giving the Browns "all legal rights and authority over said child as if they were the birth parents," including the power to receive M.K.B. upon discharge from the hospital, and further directing the hospital to discharge M.K.B. to the Browns' care.[3] The agreement also authorized the Browns to transport M.K.B. to their Harker Heights address, "which will be the primary residence of the child." The parties additionally agreed that they would keep each other advised of their addresses and telephone numbers "until an Order accepting the consent of the birth parents and granting the custodians custody of said child for purposes of adoption has been entered by the appropriate court . . . ."

On the same day, the Browns filed a petition for "temporary custody" in Virginia state court, attaching the aforementioned Entrustment Agreement and Power of Attorney. The petition alleged that the Moores "have agreed to place [M.K.B.] with the [Browns] for the purpose of adoption of their child," that the Browns "are prepared to file a petition for custody for the purpose of adoption of [M.K.B.]," and that the Moores had consented to granting the Browns "temporary legal and physical custody of [M.K.B.]" so the Browns could arrange for M.K.B.'s discharge from the hospital and take the child home. The Browns requested "interim temporary legal and physical custody over [M.K.B.] until such time as the above-referenced petition is submitted to the Court. . . ." The court forthwith issued a March 10, 2009 "consent order" granting the Browns "custody" of M.K.B., subject to the Moores' right to be apprised of the child's address and phone

---

[3] As Alvin Brown was deployed overseas, Donna executed this and other instruments on his behalf by power of attorney.

3

number and to access medical and educational records. Both the Moores and the Browns signed the order under oath to verify their agreement with its terms.

Also on March 10, 2009, the Moores each executed before a notary and two witnesses a three-page "Affidavit for Voluntary Relinquishment of Parental Rights" designating the Browns as managing conservators for M.K.B. and relinquishing to the Browns all of their parental rights and duties.[4] The Moores do not dispute that their affidavits, at least in form, satisfied each of the

---

[4] Each further averred that, among other things:

- "I fully understand that a lawsuit will be filed in a court of competent jurisdiction to terminate forever the parent-child relationship between me and [M.K.B.]. I fully understand that the termination suit may or may not be combined with a suit to adopt my child. I understand that either way, once the Court terminates my parental rights, I have no further say concerning my child, whether or not my child is adopted then or at some later time."

- "Termination of the parent-child relationship is in the best interest of the child. I understand that I make this termination possible by executing this affidavit."

- "**I DECLARE THAT THIS AFFIDAVIT FOR VOLUNTARY RELINQUISHMENT OF PARENTAL RIGHTS IS AND SHALL BE IRREVOCABLE FOR SIXTY DAYS. I FULLY UNDERSTAND THAT, IF I CHANGE MY MIND, I CANNOT FORCE THE MANAGING CONSERVATOR TO DESTROY, REVOKE, OR RETURN THIS AFFIDAVIT AND THAT I CANNOT TAKE BACK OR UNDO THIS AFFIDAVIT IN ANY WAY DURING THE SIXTY-DAY PERIOD. I FURTHER UNDERSTAND THAT MY PARENTAL RIGHTS PROBABLY WILL HAVE ALREADY BEEN ENDED FOR ALL TIME BEFORE THIS SIXTY-DAY PERIOD EXPIRES . . . .**" (Emphasis in original).

- "I know that DONNA M. BROWN and ALVIN BENARD BROWN, in accepting my child for adoptive placement and assuming responsibility for my child, are relying on my promise that I will not attempt to reclaim my child."

- "I have carefully considered alternative plans for my child's future and have obtained the advice of whatever family members, friends, or other persons and professionals I feel were necessary to help me make this decision. This decision is very difficult for me to make, and under other circumstances I might have made a different decision . . . . I declare that I fully understand the meaning of this affidavit of relinquishment and the finality of my action in signing it, and I am signing it freely, voluntarily, and with the firm conviction that this decision is the best available alternative for my child."

requirements of Texas Family Code section 161.103, the provision of the family code that prescribes the requirements for affidavits of voluntary relinquishment of parental rights, for an affidavit that would remain irrevocable for sixty days after execution, or through May 9, 2009. *See* Tex. Fam. Code Ann. § 161.103 (West 2008). Each affidavit also incorporated a waiver of notice and process concerning any further court proceedings involving M.K.B.[5] *See id*. § 161.103(c) (relinquishment

---

- "I am signing this affidavit today because I want to sign it and not because DONNA M. BROWN and ALVIN BENARD BROWN or any other person or persons want me to sign it."

- "I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT FOR VOLUNTARY RELINQUISHMENT OF PARENTAL RIGHTS IF THERE IS ANY THOUGHT IN MY MIND THAT I MIGHT SOMEDAY SEEK TO GAIN CUSTODY OF MY CHILD." (Emphasis in original).

- "AT THE TIME OF THE SIGNING OF THIS AFFIDAVIT FOR VOLUNTARY RELINQUISHMENT OF PARENTAL RIGHTS, I FEEL THAT I AM PHYSICALLY AND EMOTIONALLY PREPARED TO SIGN THE DOCUMENT. I AM NOT CURRENTLY UNDER THE INFLUENCE OF ANY SUBSTANCE AND/OR MEDICATION THAT WOULD AFFECT MY ABILITY TO EXECUTE THIS AFFIDAVIT." (Emphasis in original).

- "I AM SIGNING THIS AFFIDAVIT FOR VOLUNTARY RELINQUISHMENT OF PARENTAL RIGHTS MORE THAN FORTY-EIGHT HOURS AFTER THE BIRTH OF THE CHILD NAMED IN THE DOCUMENT." (Emphasis in original).

[5] The waiver stated:

I know that I have the right to appear personally before the Court, with an attorney of my choice, to testify about my desires with respect to the child. However, I do not want to go to court in person and choose not to be represented by a lawyer . . . .

Because I do not want to testify in person before the Court, I freely and voluntarily waive and give up my right to the issuance, service, and return of citation, notice, and all other process in any suit to terminate my parental rights or in any suit to terminate my parental rights joined with a suit to adopt. I do not want to be informed further about the lawsuit. I specifically agree that a final hearing in the lawsuit may be held at any time without further notice to me. I waive and give up my right to have the official court reporter make a record of the testimony in the lawsuit. Furthermore, I do not want to be mailed or given a copy of the judgment terminating my parental

affidavits may incorporate "a waiver of process in a suit to terminate the parent-child relationship filed under this chapter or in a suit to terminate joined with a petition for adoption"); *see also Brown v. McLennan Cnty. Children's Protective Servs.*, 627 S.W.2d 390, 392-94 (Tex. 1982) (observing that parent who signs an affidavit voluntarily relinquishing parental rights nonetheless maintains a justiciable interest in a suit to terminate parental rights until the termination order is rendered, but may waive right to notice of such proceedings).

A few days thereafter, Donna Brown left Virginia with M.K.B. and returned to Texas. On March 20, 2009, the Browns filed in Bell County district court a petition to terminate the Moores' parental rights and to adopt M.K.B. The petition alleged the sole statutory termination ground that the Moores had each executed an irrevocable affidavit of relinquishment of parental rights, as provided in family code section 161.103, and that termination of the Moores' parental rights was in M.K.B.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(1)(k), (2) (West Supp. 2012).[6] A hearing on the termination issue was set for April 30, 2009.

Consistent with the waiver the Moores had signed, they were not served either with process in the Browns' suit or notice of the termination hearing. However, the Moores attempted to reassert their parental rights in both the Bell County district court where the Browns' suit was

rights and do not want to be notified of the signing, rendition, or entry of that judgment . . . .

. . .

I FULLY UNDERSTAND THAT I MAY NOT BE FURTHER INFORMED ABOUT THE TERMINATION SUIT OR ABOUT ANY OTHER HEARINGS OR PROCEEDINGS AFFECTING THE CHILD NAMED IN THIS AFFIDAVIT.

(Emphasis in original).

[6] As there have been no material intervening substantive changes to the relevant statutes, we cite their current versions for convenience.

pending and in the Virginia state court that had issued the March 10 consent order. On April 13, 2009, Kevin Moore filed in the Virginia court a pro se motion to amend the consent order to grant custody of M.K.B. to the Moores, urging that "[t]he [b]iological parents wish to terminate the ongoing adoption and regain custody of the minor child." On April 24, the Moores, with assistance from a Virginia attorney, filed in the Browns' suit affidavits purporting to revoke their "ill-conceived" March 10 affidavits relinquishing their parental rights, requesting custody of M.K.B., and stating their opposition to the child's adoption by the Browns.

The termination hearing went forward as scheduled, with only Donna Brown, the Browns' counsel, and M.K.B.'s attorney ad litem present.[7] Following the hearing, the district court signed an order terminating the Moores' parental rights based on findings that each had "executed an irrevocable affidavit of relinquishment of parental rights as provided in chapter 161 of Texas Family Code" and that termination of parental rights was in M.K.B.'s best interest.[8] *See id.* § 161.001(1)(k), (2).

On May 14, 2009, the Moores' Virginia counsel, obviously aware of the termination ruling, wrote the Bell County District Clerk requesting a copy of the "Termination Order entered on April 30, 2009" in the Browns' suit. Subsequently, on June 1, 2009, the Moores filed a pro se "motion to reconsider" the district court's termination order, and the record reflects that the Moores

---

[7] Alvin Brown was still deployed to Iraq.

[8] The record from the hearing reflects that the district court inquired of counsel concerning the purported revocations filed by the Moores. Although indicating certainty that the revocations remained binding under Texas law, the court voiced concern that the Moores nonetheless might be entitled to notice and an opportunity to be heard. Counsel responded that any such issue was obviated by the waivers of notice incorporated into the affidavits, and at some point that day furnished authority to that effect, *In re McAda*, 780 S.W.2d 307, 312 (Tex. App.—Amarillo 1989, no writ). At the conclusion of the hearing, the district court initially took the matter under advisement but ultimately signed the termination order later that same day.

made attempts to obtain a ruling on the motion. And, sometime that month, the Moores retained new counsel—the Texas attorney who represents them in the present proceeding—who filed a notice of appeal of the termination order on July 23, 2009. But unfortunately for the Moores, their deadline for perfecting an appeal from the termination order, May 20, 2009, had already expired in the meantime, and it was likewise too late to obtain an extension. *See* Tex. R. App. P. 26.1(b) (twenty-day deadline for filing notice of appeal in accelerated appeal); *see also* Tex. Fam. Code Ann. § 109.002(a) (West Supp. 2012) (appeals of termination orders governed by accelerated appeal rules). Accordingly, we ultimately dismissed the Moores' appeal for want of subject-matter jurisdiction. *See Moore v. Brown*, No. 03-09-00449-CV, 2010 Tex. App. LEXIS 3519, at *4 (Tex. App.—Austin Apr. 20, 2010, no pet.) (mem. op.).

Meanwhile, the Browns proceeded to a May 8, 2009 hearing on their petition to adopt M.K.B. The district court granted the adoption by order signed on June 11, 2009.

The Moores also continued their attempt to regain custody through the Virginia state court system. On July 1, 2009, the Virginia court that had issued the March 10 consent order heard the Moores' motion to amend. Records from this proceeding, in evidence below, reflect that the court considered testimony from the Moores and Donna Brown, as well as "adoption orders & paperwork from Texas" and a "Consent Order signed by Mr. & Mrs. Moore," and found that "Mr. & Mrs. Moore voluntarily signed the documents and were not under any duress." Based on these findings, the court "dismissed" the Moores' motion. A subsequent appeal of this ruling was dismissed for want of jurisdiction on November 10, 2009.

On November 2, 2009, while the Moores' appeals in both Texas and Virginia remained pending, the Moores filed an original petition for bill of review in the Bell County district court that had rendered the termination and adoption orders. As their pleading was ultimately

8

amended, the Moores sought to invalidate via bill of review, or to have declared "void," both the district court's April 30, 2009 termination order and its June 11, 2009 adoption order. The Moores' principal assertion was that their execution of their relinquishment affidavits had not complied with one of the requirements of family code section 161.103—that "[a]n affidavit for voluntary relinquishment must be . . . signed after the birth of the child, but not before 48 hours after the birth of the child, by the parent . . . ." Tex. Fam. Code Ann. § 161.103(a)(l). The Moores also complained that the district court had exercised its jurisdiction over M.K.B. in violation of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) because the Virginia state court had acquired continuing, exclusive jurisdiction over the child by virtue of its March 10, 2009 consent order. *See id*. §§ 152.001-.317 (West 2008 & West Supp. 2012).

An evidentiary hearing was held at which the Moores and Browns each testified. The evidence centered on the timing and other circumstances surrounding the Moores' execution of their relinquishment affidavits. The Moores urged that a comparison between their relinquishment affidavits, which indicated a time of execution, and hospital records from M.K.B.'s birth, which were not previously before the district court, established that (1) M.K.B. had been born at 3:28 p.m. on March 8, 2009, yet (2) the Moores had executed their affidavits at 2:30 p.m. on March 10, 2009—approximately one hour short of the forty-eight-hour waiting period required by family code section 161.103. *See id.* § 161.103(a)(1). The Moores also insisted that they had never intended to give M.K.B. up for adoption and had understood that they were consenting only to a temporary custodial arrangement in which they would continue to have visitation with the child. As for their affidavits and other instruments stating otherwise, the Moores professed that they had not read them before signing, but "trusted" Donna Brown, whose counsel had prepared them. The Moores likewise claimed that Angelica had been under the influence of pain-killers or other medications when she

9

executed the documents and had done so, at the office of the Browns' counsel, immediately after being discharged from the hospital. The Browns testified to the contrary, including asserting that the parties had agreed to an adoption all along and that the Moores had merely changed their minds after the fact.

At the conclusion of evidence, the district court signed an order denying the Moores relief on their claims. The court did not specify the grounds on which it relied in its order, nor did it prepare findings of fact and conclusions of law. This appeal followed.

## ANALYSIS

The Moores bring four issues on appeal. Before turning to those contentions, it is helpful to begin with some broader threshold observations suggested by the Browns. First, as they point out, and which the Moores seem to acknowledge, the Moores would lack standing to challenge the adoption order unless and until they first succeed in having set aside the order terminating their parental rights. *See Durham v. Barrow*, 600 S.W.2d 756, 761 (Tex. 1980) (explaining that birth parent whose parental rights were terminated would have standing to challenge child's adoption only to extent the termination order was first set aside). Consequently, we will initially focus our analysis on the Moores' appellate complaints as they relate to the termination order.

The Browns also emphasize that the district court did not prepare findings of fact and conclusions of law elaborating on its bases for denying the Moores relief, nor did the Moores preserve error as to any complaint regarding the district court's failure or refusal to do so.[9] Accordingly, we presume that the district court impliedly found facts as necessary to support

---

[9] Although the Moores requested findings of fact and conclusions of law from the district court, they did not timely file a notice of past-due findings or preserve error on appeal. To the contrary, the Moores suggest that findings and conclusions are "unnecessary."

10

its judgment on any legal theory presented. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) ("When a trial court does not issue findings of fact and conclusions of law . . . all facts necessary to support the judgment and supported by the evidence are implied."); *see also S.C. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00518-CV, 2013 Tex. App. LEXIS 288, at \*16 (Tex. App.—Austin Jan. 10, 2013, no pet. h.) (mem. op.) (implying failure to find facts in absence of findings of fact and conclusions of law).

Finally, the Browns emphasize the procedural posture of the Moores' claims and the requirements for obtaining relief by bill of review.[10]  The Moores' suit is in the nature of a direct attack on the termination order, inasmuch as it was initiated for the purpose of correcting claimed error in that order. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271-72 (Tex. 2012) (explaining that a "direct attack" on a judgment refers to a proceeding initiated for the purpose of correcting claimed error in the judgment).  At this procedural juncture, the Moores must bring their direct attack through a bill of review. *See id.*  A bill of review is an equitable action brought by a party to a prior suit who seeks to set aside a judgment that can no longer be challenged by a motion for new trial or appeal. *See Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004).  A bill-of-review petitioner like the Moores must ordinarily plead and prove not only a meritorious defense to the underlying cause of

---

[10]  The Browns also urge that the Moores' briefing is so lacking in substantive analysis, citations to authority, and supporting record references that we should deem them to have waived their appellate complaints altogether and dismiss their appeal. *See* Tex. R. App. P. 38.1(i), 42.3. We decline to do so.  Although certain portions of the Moores' briefing are somewhat truncated or oblique, we can nonetheless discern the basic substance of their complaints and the legal authorities on which they rely. *See id.* R. 38.9.  But this does not mean that we will sua sponte address appellate issues and arguments that the Moores might have raised, but did not. *See Jelinek v. Casas*, 328 S.W.3d 526, 540 n.10 (Tex. 2010) (citing Tex. R. App. P. 38.1([i]); *State v. Brown*, 262 S.W.3d 365, 370 (Tex. 2008); *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 410 (Tex. 1997)); *see also In re B.L.D.*, 113 S.W.3d 340, 353-54 (Tex. 2003) (observing that appellate review of unpreserved error in parental-termination cases was not required by due process and would run counter to "the Legislature's dual intent to ensure finality in these cases and expedite their resolution").

action (here, the Browns' suit to terminate their parental rights), but also that the petitioner should be allowed to litigate the defensive issue because (1) the party was prevented from presenting that ground within the normal procedural framework of trial and appeal by accident, fraud, or wrongful act of the opposing party, or "official mistake," that is (2) unmixed with any fault or negligence on the petitioner's own part. *See id*. A bill-of-review petitioner also must prove that it exercised due diligence in pursuing all available legal remedies after the challenged judgment was rendered, or else show good cause for failing to exhaust those remedies. *See Sweetwater Austin Props., L.L.C. v. SOS Alliance, Inc.*, 299 S.W.3d 879, 886 (Tex. App.—Austin 2009, pet. denied) (citing *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989)). We review a trial court's order granting or denying a bill of review for abuse of discretion, indulging every presumption in favor of the trial court's ruling. *See id*.

As the Browns emphasize, we must imply that the district court failed to find each of the elements that the Moores were required to prove to obtain relief from the termination order by bill of review. *See S.C.*, 2013 Tex. App. LEXIS 288, at \*16. The Browns further assert that the Moores have effectively waived any challenge to the district court's denial of bill-of-review relief by failing to challenge all of these underlying implied factual determinations on appeal. The Moores do not appear to contend otherwise, but instead ultimately rely solely on their claim seeking to declare the judgment "void." Consequently, the district court did not abuse its discretion in denying the Moores' bill-of-review claim seeking to challenge the termination order.

Texas law permits a narrow category of "void" judgments to be attacked "collaterally," i.e., in a proceeding seeking to avoid the judgment's binding effect in order to obtain specific relief that the judgment currently impedes. *See PNS Stores*, 272 S.W.3d at 272. While the Moores' suit is in part a direct attack on the termination order, it is arguably also a collateral attack,

12

inasmuch as it seeks to set aside the termination order to remove an impediment to their ability to obtain relief from the adoption order. A judgment may be "void" and subject to collateral attack if any one of the following applies to the court rendering the judgment: (1) no jurisdiction of the parties or property; (2) no jurisdiction of the subject matter; (3) no jurisdiction to enter the judgment; or (4) no capacity to act as a court. *See Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985). Additionally, the Texas Supreme Court in the past has appeared to recognize an exception to the requirements of a bill of review that permits a direct attack on judgments that the trial court entirely lacked "jurisdictional power" to render. *See McEwen v. Harrison*, 345 S.W.2d 706, 710 (Tex. 1961); *see also SOS Alliance*, 299 S.W.3d at 889. "Without jurisdictional power" in this sense refers to a tribunal's lacking "jurisdiction over the subject matter, the power to hear and determine cases of the general class to which the particular one belongs." *SOS Alliance*, 299 S.W.3d at 889 (quoting *Deen v. Kirk*, 508 S.W.2d 70, 72 (Tex. 1974)). Neither party addresses whether the Moores' claim seeking to declare the judgment "void" is the sort of jurisdiction-based collateral or direct attack that would be permitted under these principles. However, the Browns do not appear to contend that the Moores' inability to satisfy the bill-of-review elements is singularly fatal to their claim seeking to declare the judgment "void." We will assume without deciding that it is not (either because their claim is considered a permissible direct attack on the termination order, a collateral attack, or both) because there are independently dispositive statutory bars to all of the Moores' claims in any event.

**Compliance with forty-eight-hour waiting period**

The Moores' central contention, raised in their first issue, is that "undisputed" evidence they presented below in this proceeding—chiefly, the hospital records from M.K.B.'s

13

birth—establishes that they executed their affidavits relinquishing parental rights less than forty-eight hours after the child's birth, and contrary to the requirements of family code section 161.103. The Moores urge that this defect not only negates the sole statutory ground for the district court's termination order, but renders the affidavit a "nullity" or "void" for all purposes and effectively returns the parties to the status quo that existed before the affidavits were executed. Consequently, the Moores reason, the Browns lacked standing to file their suit seeking termination and adoption, the district court lacked subject-matter jurisdiction to grant either order, the orders were thus themselves void and had no effect on the Moores' parental rights, and basically the underlying termination and adoption proceedings unravel completely.

In support of these propositions, the Moores appear to rely on language in this Court's opinion dismissing the Moores' untimely appeal of the termination order. The Court posited, with reference to the Moores' claims that the affidavits were not executed in compliance with the forty-eight-hour waiting period, that "[s]uch a defect, if proved, might render the affidavit of relinquishment a nullity . . . and arguably defeat a party's standing to file a suit affecting the parent-child relationship on the basis that he or she is a person 'designated as the managing conservator in an affidavit of relinquishment,' *see* Tex. Fam. Code Ann. § 102.003(a)(10) (West Supp. 2009)." *Moore*, 2010 Tex. App. LEXIS 3519, at *3. For the proposition that an affidavit of relinquishment failing to comply with the forty-eight-hour requirement is a "nullity," the Court cited *Sims v. Adoption Alliance*, 922 S.W.2d 213 (Tex. App.—San Antonio 1996, writ denied), on which the Moores also rely here. In *Sims*, the Fourth Court of Appeals, applying the then-newly enacted forty-eight-hour waiting-period requirement in a direct appeal from a termination order brought by a birth mother, held that the trial court had "erred" in terminating the mother's rights based on an

"invalid" relinquishment affidavit she had executed only twenty-six hours after her child's birth. *See id*. at 217-18.

The aforementioned statement from the first *Moore* opinion was dicta, being wholly unnecessary to the Court's holding that the Moores had failed to perfect a timely appeal or preserve a right to an extension of time. *See Moore*, 2010 Tex. App. LEXIS 3519, at *4. As for *Sims*, the case merely holds that a termination order predicated on an affidavit of relinquishment that failed to comply with the forty-eight-hour waiting period was reversible error, at least on direct appeal. *Sims*, 922 S.W.2d at 217-18 ("[T]he affidavit of relinquishment was invalid and the trial court erred in terminating the parental rights . . . on that basis."). The procedural posture of the Moores' challenge here is different, as the Browns emphasize. But more importantly, *Sims* predates statutory limitations the Browns raised that constrain this sort of challenge to orders terminating parental rights.

Enacted in 1997,[11] subsection (a) of family code section 161.211 states, in relevant part:

> Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person . . . who has executed an affidavit of relinquishment of parental rights . . . is not subject to collateral or direct attack after the sixth month after the date the order was signed.

---

[11] *See* Act of May 28, 1997, 75th Leg., R.S., ch. 600, § 1, 1997 Tex. Gen. Laws 2108, 2108 (amended 1999) (current version at Tex. Fam. Code Ann. § 161.211 (West 2008)); Act of May 28, 1997, 75th Leg., R.S., ch. 601, § 2, 1997 Tex. Gen. Laws. 2118, 2118 (amended 1999) (current version at Tex. Fam. Code Ann. § 161.211).

Tex. Fam. Code Ann. § 161.211(a) (West 2008).[12]   In the same bills, the Legislature enacted

subsection (c) to section 161.211, which further limits the permissible scope of such "collateral or

direct attacks" on termination orders based on affidavits of relinquishment:

> A direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights . . . is limited to issues related to fraud, duress, or coercion in the execution of the affidavit.

*Id*. § 161.211(c) (West 2008).[13]   In reply, the Moores insist that the "voidness" of their affidavits

of relinquishment negates the application of either provision.  Relying on their premise that their

affidavits of relinquishment were "void" and effectively nonexistent by virtue of noncompliance

with section 161.103's forty-eight-hour waiting period, the Moores conclude that neither of them

was "a person . . . who has executed *an affidavit of relinquishment of parental rights*" within the

meaning of subsection (a), rendering inapplicable the provision's six-month deadline.[14]   Similarly,

the Moores reason that the district court's termination order was not "an order terminating parental

rights based on an unrevoked affidavit of relinquishment of parental rights" within the meaning of

---

[12]   Texas courts are currently split as to whether this deadline is a jurisdictional bar or is in the nature of a limitations period that must be pleaded as an affirmative defense.  *See In re E.R.*, 385 S.W.3d 552, 567 n.27 (Tex. 2012).  The Browns raised it both ways in the district court, pleading an affirmative defense of "limitations" and moving to dismiss the Moores' action for want of jurisdiction.

[13]   *See* Act of May 28, 1997, 75th Leg., R.S., ch. 600, § 1, 1997 Tex. Gen. Laws 2108, 2108 (amended 1999) (current version at Tex. Fam. Code Ann. § 161.211); Act of May 28, 1997, 75th Leg., R.S., ch. 601, § 2, 1997 Tex. Gen. Laws 2118, 2118 (amended 1999) (current version at Tex. Fam. Code Ann. § 161.211).

[14]   Subsection (a)'s six-month deadline also applies when the order terminates the parental rights of a person "who has been personally served or who has executed . . . an affidavit of waiver of interest in a child or whose rights have been terminated under Section 161.002(b)."  Tex. Fam. Code Ann. § 161.211(a).  It is undisputed that the Moores were not "personally served," as they had waived service, and that the sole potential basis of application of the provision to them was that each was a "person . . . who has executed an affidavit of relinquishment of parental rights."  *Id.*

subsection (c) because there was no "affidavit of relinquishment of parental rights" that could be the basis for the order.

The Moores' arguments rest upon a critical predicate assumption—that they can still litigate the issue of whether their affidavits of relinquishment were executed in compliance with section 161.103's forty-eight-hour waiting period. To be more precise, the Moores seek to *re*-litigate this issue, as the district court previously decided it when rendering its termination order and finding they each had "executed an irrevocable affidavit of relinquishment of parental rights as provided in chapter 161 of Texas Family Code." That order and finding are final and binding unless the Moores can succeed in having it set aside through collateral or direct attack. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863, 865-66 (Tex. 2010). And such a remedy is foreclosed, the Browns urge, by not only the Moores' inability to satisfy the procedural requirements of their bill-of-review claim, but also by the language of subsections (a) and (c) of section 161.211 themselves. We agree.

Resolution of this issue turns on statutory construction, which presents a question of law that we review de novo. *See Texas W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). To discern that intent, we begin with the statute's words. *Id*. "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g). The words cannot be examined in isolation, but must be informed by the context in which they are used. *TGS-NOPEC Geophysical*, 340 S.W.3d at 441. We rely on the plain meaning of the words, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 (West 2005)

17

("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We further presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen. *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008).

Turning to the text of subsections (a) and (c) of section 161.211, we begin by observing that both provisions constrain both "direct" and "collateral" attacks, without limitation or qualification. As previously discussed, "collateral" attacks include—indeed, are permitted solely for—challenges to the trial court's jurisdiction. *See Browning*, 698 S.W.2d at 363. Consequently, the Legislature's unqualified use of "direct" and "collateral" attack denotes intent that subsections (a) and (c) have sweeping, all-encompassing breadth, applying to complaints of everything from procedural errors to jurisdictional defects. *See HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 363 (Tex. 2009) ("We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired . . . ." (citing Tex. Gov't Code Ann. § 311.011)); *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) ("We presume the Legislature is aware of relevant case law when it enacts or modifies statutes." (citing *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990))).

Turning now to the text of subsection (a) in particular, it bars any "collateral or direct attack" on "the validity of an order terminating the parental rights of a person . . . who has executed an affidavit of relinquishment of parental rights" "after the sixth month after the date the order was signed." Tex. Fam. Code Ann. § 161.211(a). The Moores plainly bring a "collateral or direct attack" on the "validity of an order terminating [their] parental rights," and they likewise are each a person

18

"who has executed an affidavit of relinquishment of parental rights."  Although the Moores insist that the phrase "person who has executed an affidavit of relinquishment of parental rights" presumes and requires "an affidavit of relinquishment of parental rights" that complies with each of the requirements of section 161.103, subsection (a) does not actually say this, and in any event the termination order resolved that question unless and until the Moores could show themselves entitled to relief from that order.  Finally, the "order" terminating the Moores' parental rights "was signed" on April 30, 2009, making "the sixth month after th[at] date" October 30, 2009, a Friday.  *See* Tex. Gov't Code Ann. 311.014(c) (West 2005) (when counting "months" in codes, look to corresponding date in successive months).[15]  Because the Moores did not file their petition below until the following Monday, November 2, it was untimely under subsection (a) of section 161.211.

The Moores urge that subsection (a)'s six-month period should instead begin on May 1, 2009, when the signed termination order was filed with the Bell County District Clerk, but that is contrary to the provision's text, which states that the period shall begin on "the date the order was signed."  *See* Tex. Fam. Code Ann. § 161.211(a).  In the further alternative, the Moores urge in their fourth issue that their suit was timely because 161.211(a)'s six-month deadline, if applicable, was tolled under the Servicemembers Civil Relief Act by virtue of Alvin Brown's military service.  We need not address that issue because even if the Moores' suit might be considered timely by virtue of tolling, their challenges to the termination order are barred by subsection (c) of section 161.211.

Subsection (c) limits "[a] direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights . . . to issues relating to fraud, duress, or coercion in the execution of the affidavit."  *Id.* § 161.211(c).  It is beyond dispute

---

[15]  Thus, we reject the Browns' assertions that the deadline was October 27, 2009.

19

that the termination order here is "an order terminating parental rights" under chapter 161 of the family code. The order is likewise plainly "based upon" the Moores' affidavits of relinquishment, which were made irrevocable under family code section 161.103 and were thus "unrevoked."[16] As for the "issues related to fraud, duress, or coercion in the execution of the affidavit" to which the Moores' attacks on the termination order are limited, the phrase contemplates a procedural framework predating section 161.211 that Texas courts have followed in parental-termination cases founded on affidavits of relinquishment.

Under that framework, a person seeking to terminate parental rights based on an affidavit of relinquishment has the initial burden of proving, by clear and convincing evidence, that the affidavit was executed in accordance with section 161.103's requirements. *See, e.g.*, *Coleman v. Smallwood*, 800 S.W.2d 353, 356 (Tex. App.—El Paso 1990, no writ) (citing *Terrell v. Chambers*, 630 S.W.2d 800, 802-03 (Tex. App.—Tyler), writ ref'd n.r.e., 639 S.W.2d 451 (Tex. 1982)); *accord Monroe v. Alternatives in Motion*, 234 S.W.3d 56, 62 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Vela v. Marywood*, 17 S.W.3d 750, 758 (Tex. App.—Austin 2000, pet. denied). An affidavit of relinquishment in proper form is itself prima facie evidence of its validity. *See Brown*, 627 S.W.2d at 394; *accord Monroe*, 234 S.W.3d at 62; *In re R.B.*, 225 S.W.3d 798, 804 (Tex. App.—Fort Worth 2007, no pet.). And, once that burden is met, the longstanding rule has been that the affidavit may be set aside only on proof that the affidavit was executed as a result of "fraud," "coercion," "duress," or related factors going ultimately to whether the waiver of parental

---

[16] The Moores make a passing assertion that their affidavits were not "unrevoked" because they purported to revoke them. However, the affidavits were made irrevocable at all relevant times under family code section 161.103, so the Moores' purported revocations were in themselves ineffective. *See Wall v. Texas Dep't of Family & Protective Servs.*, 173 S.W.3d 178, 181 (Tex. App.—Austin 2005, no pet.) (trial court properly denied mother's attempt to revoke an irrevocable affidavit of voluntary relinquishment).

20

rights in the affidavit was made voluntarily, knowingly, intelligently, and with full awareness of the legal consequences, as is constitutionally required. *See Brown*, 627 S.W.2d at 394; *accord Monroe*, 234 S.W.3d at 61-62; *Vela*, 17 S.W.3d at 758-59.[17]  An involuntarily executed affidavit of relinquishment is a complete defense to a termination order. *See Vela*, 17 S.W.3d at 759.

We are to presume that the Legislature crafts its statutes with awareness of background law such as this.[18]  Against that backdrop, subsection (c)'s reference to "issues relating to fraud, duress, or coercion in the execution of the affidavit" denotes a category of complaints that is distinct from, and is preceded by, the question of whether the affidavit complies with all of the requirements of section 161.103. This is understandable. Section 161.103 prescribes a number of regulations that, while perhaps serving as prophylactic safeguards calculated to ensure the voluntariness of execution, are somewhat formalistic and technical in nature. These include not only the forty-eight-hour waiting period that is the Moores' focus, but such requirements as that the affidavits be witnessed by two credible persons; must be verified before a person authorized to take oaths; and must contain certain detailed information about the child and the parents, an "allegation

---

[17] This Court and others have further reasoned that the parent had not only the burden of producing evidence of fraud, duress, coercion, etc., but also has the ultimate burden of proving same by a preponderance of the evidence. *See Monroe v. Alternatives in Motion*, 234 S.W.3d 56, 62 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Vela v. Marywood*, 17 S.W.3d 750, 758 (Tex. App.—Austin 2000, pet. denied). In 2003, a plurality of the Texas Supreme Court questioned whether the ultimate burden of proving fraud, duress, or coercion could properly be placed on the parent, urging that the ultimate burden should remain with the affidavit proponent to prove, by clear and convincing evidence, and notwithstanding the evidence of fraud, duress, or coercion, that the affidavit was voluntarily executed. *See In re L.M.I.*, 119 S.W.3d 707, 720 (Tex. 2003) (Owen, J., concurring and dissenting). However, the plurality agreed that the parent bore the burden of producing evidence to challenge the voluntariness of the affidavit. *See id.*

[18] *See In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) ("We presume the Legislature is aware of relevant case law when it enacts or modifies statutes." (citing *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990))).

that termination of the parent-child relationship is in the best interest of the child," "a statement that the parent has been informed of parental rights and duties," a designation of a prospective adoptive parent, and a statement as to whether the relinquishment is revocable, irrevocable, or irrevocable for a specified period of time. Tex. Fam. Code Ann. § 161.103. These requirements are not the same as "fraud," "duress," and "coercion," and are not in themselves determinative of whether the affidavit was voluntarily executed.

Consequently, subsection (c)'s limitation of "direct or collateral attack[s] on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights" to "issues relating to fraud, duress, or coercion in the execution of the affidavit" proscribes challenges based solely on a complaint that the affidavit violated one of section 161.103's requirements. Subsection (c) thus bars the Moores' claims seeking to invalidate or set aside the termination order on the ground that their affidavits of relinquishment were executed within the forty-eight-hour waiting period.

Beyond urging that subsection (c) of section 161.211 does not apply to their claims, the Moores refer in their reply brief to *In re E.R.*, in which the Texas Supreme Court held that the enforcement of subsection (b) of section 161.211, which imposes a six-month deadline for persons served by publication in a parental-termination cases, must yield to the extent required by due process. 385 S.W.3d 552, 567 (Tex. 2012). The Moores suggest that the district court's reliance on their "defective" affidavits of relinquishment violates due process in the same manner that the constitutionally defective service by publication addressed in *E.R.* Leaving aside that the Moores did not raise this argument in their opening brief,[19] they do not present authority for this proposition

---

[19] *See Sunbeam Envtl. Servs. v. Texas Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 851 (Tex. App.—Austin 2002, no pet.) (finding waiver of appellate issue raised for first time in reply brief rather than opening brief); *see also In re B.L.D.*, 113 S.W.3d at 353.

or otherwise explain why this is so. We cannot conclude that the Moores have demonstrated that the application of subsection (c) violates their due process rights.

Absent a showing of such a constitutional bar to subsection (c)'s enforcement, we are bound to give it effect. Because the Moores' claims seeking to invalidate or set aside the termination order on the ground that their affidavits of relinquishment were executed within the forty-eight-hour waiting period are not "limited to issues related to fraud, duress, or coercion in the execution of the affidavit," they are barred by subsection (c). We overrule the Moores' first issue.

**UCCJEA**

In their second issue, the Moores urge that the Virginia state court had continuing, exclusive jurisdiction over M.K.B. and that the district court's termination order and subsequent adoption order were "void" for this reason. As with their complaints about compliance with the forty-eight-hour requirement, the Moores assert a challenge to the termination order that is beyond the scope permitted by subsection (c) of section 161.211. We must presume that the Legislature meant what it said—"a direct or collateral attack . . . " (which, as we have seen, can include jurisdictional challenges) ". . . on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights . . ." (which is the case with the termination order at issue here) " . . . is limited to issues related to fraud, duress, or coercion in the execution of the affidavit" (which a challenge based on the UCCJEA is not). Accordingly, we overrule the Moores' second issue.

**Fraud, duress, or coercion?**

In their third issue, the Moores complain of "fraud" through misstatements or omissions in the Browns' petition in their termination and adoption suit that, in their view,

23

contributed to the district court's decision to exercise jurisdiction rather than deferring to the Virginia court under the UCCJEA. However, these complaints do not concern fraud in procurement of the Moores' affidavits of relinquishment, and are thus not permissible avenues of attack under subsection (c) of section 161.211. We overrule the Moores' third issue.

Although the Moores appeared to contest the issue below, we cannot discern anywhere in their appellate briefing that they are claiming error or seeking relief predicated on a claim of fraud, duress, or coercion in the procurement of their affidavits of relinquishment. To the extent that their briefs might be so construed, we would conclude that any evidence to that effect, which was limited almost entirely to the Moores' oral testimony, fell within the district court's discretion to disregard, especially in the face of the Browns' testimony that the parties had intended an adoption all along, the extensive documentary evidence consistent with such a plan, and the fact that the Moores even consented to giving the child the Browns' surname rather than their own. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (noting that "the factfinder, not the appellate court, is the sole arbiter of the witnesses' credibility and demeanor"); *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). In short, the Moores have not provided us any basis for holding that they did not execute their affidavits relinquishing parental rights voluntarily, knowingly, intelligently, and with full awareness of the legal consequences.[20]

## CONCLUSION

"A parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *In re E.R.*, 385 S.W.3d at 554 (quoting *Santosky v. Kramer*, 455 U.S. 745, 747-

_____

[20] And the same would be true for their waiver of process and service that was incorporated in those affidavits, to the extent that issue might otherwise be relevant.

24

48 (1982)). But the law recognizes that this precious right may be waived, and litigation concerning the validity of such waivers is further governed by statutes such as family code section 161.211, which were enacted to "ensure that children's lives are not kept in limbo while judicial processes crawl forward," *In re B.L.D.*, 113 S.W.3d at 353, and by the more general requirements of Texas trial and appellate procedure. *See id.* Applying those legal principles here, and absent any showing of a constitutional barrier to their enforcement, we have concluded that the Moores' waivers of their parental rights to M.K.B. must be given effect.

We have overruled the Moores' first, second, and third issues challenging the district court's order terminating the Moores' parental rights to M.K.B., and need not reach their fourth. These holdings likewise dispose of the Moores' appellate complaints as they relate to the district court's adoption order. *See Durham*, 600 S.W.2d at 761. We affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Field

Affirmed

Filed: February 22, 2013

25