

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00166-CV

IN THE INTEREST OF A.R.M.K., A CHILD

On Appeal from the 154th District Court
Lamb County, Texas
Trial Court No. DCV19960-18, Honorable Kara L. Darnell, Associate Judge Presiding

September 30, 2019

## OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

In this accelerated appeal, appellant, Mother,[1] seeks reversal of the judgment terminating her parental rights to her child, A.R.M.K., and appointing the Texas Department of Family and Protective Services as permanent managing conservator of the child. In four issues, Mother argues that the affidavit relinquishing her parental rights is invalid, the affidavit was obtained as a result of fraud, there is insufficient evidence that termination is in the best interest of the child, and the court erred in appointing the

---

[1] To protect the child's privacy, we will refer to the appellant as "Mother" and to the child by initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b). The father of A.R.M.K. signed an affidavit relinquishing his parental rights in this proceeding. He does not appeal.

Department as the permanent managing conservator.  For the reasons set forth below, we affirm the judgment.

## Background

In June of 2018, the Department brought this suit on behalf of two-month-old A.R.M.K. after allegations of domestic violence, drug use, and medical neglect of A.R.M.K. were investigated by the Department.  The petition requested that the Department be appointed temporary managing conservator of A.R.M.K.  The trial court entered temporary orders naming the Department temporary managing conservator.  The Department eventually determined that reunification of A.R.M.K. with Mother was not feasible and pursued a petition to terminate the parent-child relationship.

The final hearing in this matter was set for April 12, 2019.  Before the hearing commenced, Mother signed an irrevocable affidavit of relinquishment to A.R.M.K.  The affidavit was signed before two witnesses and Mother's attorney.  In addition, a notary public acknowledged the affidavit.  Mother was not present at the termination hearing.

The Department caseworker testified that the affidavit of relinquishment was "signed in conjunction with a post-adoption agreement that has been made by the parents" with the paternal aunt and "[the affidavits] were reviewed with the parents by their respective attorneys."  The caseworker did not have any reason to believe that the affidavit was not signed freely and voluntarily.  According to the caseworker, it is in the best interest of A.R.M.K. that the parental rights be terminated because the paternal aunt "is willing to be a long-term placement for [A.R.M.K.] that is a stable environment."  The trial court signed an order terminating Mother's parental rights based on its findings that

2

Mother voluntarily executed the affidavit and termination was in the best interest of the child. The trial court designated the Department as the managing conservator of A.R.M.K.

Three weeks later, Mother filed a motion for new trial claiming ineffective assistance of counsel and challenging the legal and factual sufficiency of the evidence to support the trial court's judgment. The trial court held a hearing on the motion. However, Mother did not testify at the hearing or present any evidence challenging the validity of the affidavit of relinquishment.[2] After hearing evidence, the associate judge denied the motion.

Mother then filed this appeal. By her appeal, Mother presents four issues. Mother argues that the affidavit of relinquishment is invalid because her lawyer served as the notary, the affidavit was obtained as the result of fraud, there is insufficient evidence that termination is in the best interest of A.R.M.K., and the judge erred in appointing the Department as the permanent managing conservator of A.R.M.K.

## Standard of Review

Involuntary termination of parental rights is a serious proceeding implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v.*

---

[2] At the conclusion of the hearing on Mother's motion for new trial, Mother's appellate counsel told the associate judge that "[t]he purpose of the motion for new trial was to develop a record as required on the ineffective assistance [of counsel claim]. The other issue on the relinquishment is on the – the validity of the relinquishment is something I will bring to the Court of Appeals."

*Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick,* 685 S.W.2d at 20. However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interest. *In re T.G.R.-M.*, 404 S.W.3d 7, 12 (Tex. App.— Houston [1st Dist.] 2013, no pet.).

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or

4

conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Applicable Law

Termination of Parental Rights Requires Clear and Convincing Evidence

In a case to terminate parental rights by the Department under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018).[3] Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2019); *In re*

---

[3] Future reference to provisions of the Texas Family Code will be by reference to "section __" or "§__."

*J.F.C.,* 96 S.W.3d at 264. Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

Voluntary Affidavit of Relinquishment

Under the Texas Family Code, the trial court may terminate parental rights upon a finding, by clear and convincing evidence, that the parent has "executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by this chapter," and that termination is in the best interest of the child. § 161.001(b)(1)(K), (2). The express requirements of such an affidavit of relinquishment are identified in section 161.103. § 161.103 (West Supp. 2018). Implicit in the Family Code is the requirement that the affidavit of voluntary relinquishment be voluntarily executed. *Neal v. Tex. Dep't of Human Servs.*, 814 S.W.2d 216, 218 (Tex. App.—San Antonio 1991, writ denied). An involuntarily executed affidavit is a complete defense to a termination decree based solely on such an affidavit. *In re D.R.L.M.*, 84 S.W.3d 281, 296 (Tex. App.—Fort Worth 2002, pet. denied).

An affidavit of relinquishment that meets the requirements of section 161.103 of the Texas Family Code is prima facie evidence of its validity. *See In re R.B.*, 225 S.W.3d 798, 804 (Tex. App.—Fort Worth 2007, no pet.). After the proponent of an affidavit demonstrates that it complies with the requirements of Texas Family Code section 161.103, the party opposing the affidavit must prove, by a preponderance of the evidence, that it was executed as a result of "fraud, duress, or coercion" for the affidavit to be set aside. § 161.211(c) (West 2014); *see In re D.E.H.*, 301 S.W.3d 825, 830 (Tex. App.—Fort Worth 2009, pet. denied) (en banc).

Analysis

Validity of Affidavit of Relinquishment

In her first issue, Mother contends that her affidavit of relinquishment does not comply with section 161.103 of the Texas Family Code because it was acknowledged by her attorney. She contends that her attorney is an interested party and thus was disqualified from notarizing the affidavit of relinquishment based on the holding in *Terrell v. Chambers*, 630 S.W.2d 800, 802 (Tex. App.—Tyler 1982), writ ref'd n.r.e., 639 S.W.2d 451 (Tex. 1982) (per curiam) (affidavit of relinquishment is invalid when acknowledged by an attorney with a strong financial and beneficial interest in the proceeding).

In *Terrell*, after executing an irrevocable affidavit of relinquishment, the mother filed a proceeding to revoke her relinquishment. *Id.* at 801. The trial court heard the termination suit first, and determined the affidavit to be irrevocable, and terminated the mother's parental rights. *Id.* at 801-02. On appeal, the record established that the attorney for the prospective adoptive parents not only notarized the mother's affidavit, but the affidavit designated the attorney as the managing conservator of the child. *Id.* at 802. The attorney represented the adoptive parents at both the termination proceeding and the appeal. *Id.* There was a dispute at trial concerning whether the mother had actually sworn to the affidavit. The mother testified that she had not; however, the attorney testified that she had. *Id.* The court of appeals voided the affidavit because it determined

that the attorney had a strong financial and beneficial interest in the affidavit that disqualified the attorney to serve as the notary. *Id.* [4]

In her brief, Mother asserts that her trial counsel was not prepared for a contested trial and that trial counsel's best interests were served by encouraging Mother to relinquish her rights to A.R.M.K. However, during the hearing on the motion for new trial, the court heard testimony from Mother's trial counsel that counsel communicated with Mother in person, by telephone, through several dozen emails, and fifty-one pages of text messages, and that she was adequately prepared to try the case. Our review of the record indicates that there was no evidence from which the court could conclude that Mother's counsel had an interest that disqualified counsel from serving as notary. As such, we conclude that the affidavit is valid and complies with the requirements of section 161.103 of the Family Code. Moreover, Mother's challenge is barred by section 161.211.

Section 161.211(c) of the Texas Family Code provides that: "A direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights . . . is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit." § 161.211(c); *Moore v. Brown*, 408 S.W.3d 423, 438 (Tex. App.—Austin 2013, pet. denied) ("Consequently, subsection (c)'s limitation of direct or collateral attack[s] on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights to issues relating to fraud, duress, or coercion in the execution of the affidavit proscribes challenges based solely on a

---

[4] In refusing to grant writ on this case, the Texas Supreme Court stated the following: "We are not to be understood as approving the holding of the Court of Appeals that the affidavit of relinquishment was void because the attorney who acted as the notary to take the affidavit has a 'strong financial and beneficial interest.' Among other things, no financial interest appears in the record. The point is reserved." *Id.* at 452.

9

complaint that the affidavit violated one of section 161.103's requirements."); *see also In re A.H.*, No. 09-14-00291-CV, 2014 Tex. App. LEXIS 13549, at *11 (Tex. App.—Beaumont Sept. 15, 2014, no pet.) (mem. op.) ("Therefore, challenges to deficiencies in the affidavits [under section 161.103] are precluded under section 161.211(c).").

Because the record does not support Mother's assertions and because the challenge is barred by section 161.211(c), we overrule Mother's first issue.

Fraud in Execution of Affidavit

In her second issue, Mother claims that her affidavit of voluntary relinquishment of parental rights was obtained due to fraud. Mother contends that this fraud occurred because she was promised post-adoption contact, but her trial counsel failed to obtain a completed, executed copy of the agreement.

As previously noted, a direct attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit. § 161.211(c); *In re M.M.*, 538 S.W.3d 540, 541 (Tex. 2017) (per curiam). In this context, "[f]raud may be committed through active misrepresentation or passive silence and is an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another or the taking of an undue and unconscientious advantage." *In re D.E.H.*, 301 S.W.3d at 829. The burden of proving fraud is on the party opposing the affidavit. *Id.* at 830.

At the termination hearing, the caseworker testified that the affidavit of relinquishment was signed in conjunction with a post-adoption agreement between the

10

parents and the paternal aunt. The caseworker further testified that Mother's attorney reviewed the affidavit with Mother and the caseworker did not have any reason to believe that the affidavit was not signed freely and voluntarily. The details of the agreement were not announced to the court, and the agreement was not admitted into evidence. During the hearing on the motion for new trial, Mother's trial counsel testified that around the time of the final hearing, the Department approved the home study of the paternal aunt and made plans to move A.R.M.K. to the aunt's care. Mother's trial counsel acknowledged that she prepared a Rule 11 agreement for post-adoption contact between Mother and the paternal aunt, but that she did not have a completed and signed Rule 11 agreement. Mother's trial counsel also testified that Mother wasn't worried about a written agreement because "she and [the paternal aunt] are close."

Mother did not testify at the hearing on her motion for new trial. She does not direct us to any place in the record that supports her assertion that she was promised or relied on a promise of post-adoption contact. Likewise, she fails to identify any place in the record where she establishes that she would not have voluntarily relinquished her rights to A.R.M.K. but for an agreement for post-adoption contact. After reviewing the record, we conclude that Mother has failed to satisfy her burden of proving by a preponderance of the evidence that the affidavit of relinquishment was executed as a result of fraud. *See id.* at 832. Consequently, Mother's second issue is overruled.

Best Interest of the Child

In her third issue, Mother contends that without an affidavit of relinquishment executed in compliance with section 161.103, or with an affidavit that was obtained by

11

fraud, the evidence is factually insufficient to establish that termination of her parental rights was in the best interest of A.R.M.K.  To the extent that this issue encompasses issues determined in our analysis of Mother's first two issues, it is overruled.

An affidavit of relinquishment itself can provide clear and convincing evidence that termination is in a child's best interest.  *In re K.S.L.*, 538 S.W.3d 107, 112 (Tex. 2017). Here, in addition to the signed affidavit of relinquishment, the court heard evidence from the Department caseworker concerning the child's placement in a foster home in Lubbock and a recently approved home study for a paternal aunt.  According to the caseworker, the paternal aunt expressed a desire to be a long-term placement and to adopt A.R.M.K. if parental rights are terminated.  The court also heard the caseworker's opinion that it is in A.R.M.K.'s best interest to be in a long-term placement with the aunt, who can provide a stable environment for A.R.M.K., because Mother was not able to currently provide a safe and appropriate home for A.R.M.K.

Based upon our review of the entire record, we conclude that the trial court could have reasonably formed a firm conviction or belief that termination of Mother's rights was in A.R.M.K.'s best interest.  *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re M.N.G.*, 147 S.W.3d 521, 539 (Tex. App.—Fort Worth 2004, pet. denied).  Accordingly, we hold that the evidence is legally and factually sufficient to support the best interest finding, and we overrule Mother's third issue.

Appointment of Department as Managing Conservator

In her fourth issue, Mother urges that the court erred in appointing the Department as the managing conservator of A.R.M.K.  The Department argues that this issue is

subsumed by Mother's challenge to the termination of her parental rights. *See In re D.N.C.*, 252 S.W.3d 317, 318 (Tex. 2008) (per curiam). We agree with the Department.

We review a conservatorship determination for an abuse of discretion and will reverse only if the decision is arbitrary and unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Texas Family Code section 161.207(a) provides, in part, that if the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint "a suitable, competent adult," the Department, or a licensed child-placing agency as managing conservator of the child. § 161.207(a).

Here, we have concluded that the evidence presented at the final hearing was sufficient to support the trial court's findings under sections 161.001(b)(1)(K) and 161.001(b)(2). There was no evidence presented to establish appointment of another suitable, competent adult as conservator of the child. Accordingly, Mother's argument against the trial court's appointment of the Department as the permanent managing conservator is without merit. *In re N.T.*, 474 S.W.3d 465, 481 (Tex. App.—Dallas 2015, no pet.). We overrule Mother's fourth issue.

## Conclusion

Having resolved each of Mother's issues against her, we affirm the trial court's judgment.


Judy C. Parker
Justice

13