In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00291-CV
_____

IN THE INTEREST OF A.H., M.H., AND J.H.

On Appeal from the 279th District Court
Jefferson County, Texas
Trial Cause No. C-219,077

MEMORANDUM OPINION

Appellant C.H. ("the mother") appeals the trial court's judgment terminating her parental rights to her children A.H., M.H., and J.H. Appellant J.H. ("the father") appeals the trial court's judgment terminating his parental rights to his children M.H. and J.H.[1] The mother and the father each raise two issues on

---

[1] In the father's appellate brief, he states that he is the father of A.H., M.H., and J.H. However, the trial court found no parent-child relationship existed between the father and A.H., and the trial court did not make a determination as to the father's rights to A.H. R.T., the alleged father of A.H., does not appeal the termination of his parental rights.

appeal.[2] We affirm the trial court's judgment.

## I. Factual and Procedural Background

C.H. is the mother of A.H., M.H., and J.H.  J.H. is the father of M.H. and J.H.  The Texas Department of Family and Protective Services ("the Department") moved to have the mother's and the father's parental rights terminated. *See* Tex. Fam. Code Ann. § 161.001 (West 2014).

The final hearing in this matter was set for June 17, 2014.  Before the final hearing commenced, the mother and the father signed irrevocable affidavits of relinquishment to their children. During the final hearing, the affidavits of relinquishment were entered into evidence without objection. Both affidavits contain statements wherein the mother and the father acknowledged that they had been informed of their parental rights to the children. Both affidavits stated, among other things, the following:

- "Termination of the parent-child relationship is in the best interest of the [children]."

- "I understand that by naming the Department of Family and Protective Services as managing conservator in this Affidavit of Relinquishment, I give up all my parental rights and grant them to

---

[2] The mother and the father filed separate appellate briefs with this Court. Because both the mother and the father raise the same issues on appeal, unless specifically noted otherwise, we address the issues collectively.

the Department and/or to the adoptive parents with whom my [children] may be placed."

- "I designate the Texas Department of Family and Protective Services, whose address is 3105 Executive Blvd., Beaumont, Texas, as managing conservator of the child."

- "I freely, voluntarily, and permanently give and relinquish to the Department all my parental rights and duties. I consent to the placement of the [children] for adoption or in substitute care by the Department or by a licensed child-placing agency."

- "**This Affidavit of Relinquishment of Parental Rights is and shall be final, permanent, and irrevocable. I fully understand that, if I change my mind at any time, I can never force the agency to destroy, revoke or return this affidavit.**"

- "**I fully understand that this affidavit, once signed, is irrevocable, and I will not be further informed of any hearings or proceedings affecting the [children] named in this affidavit, including any termination suit.**"

Both affidavits were notarized and signed in the presence of two witnesses. At the final hearing, the mother testified on direct examination as follows:

> Q. [C.H.], are you -- have we met today in the jury room to discuss a possible relinquishment of your parental rights?
> A. Yes. She did.
> Q. Did we go over what all that means?
> A. Yes.
> Q. Did you have an opportunity to look at the paperwork?
> A. Yes.
> Q. Did you have an opportunity to ask questions of the attorney ad litem . . .?
> A. Yes.
> Q. And the CASA supervisor . . .?
> A. Yes.

3

Q.    And did you sign the paperwork?
A.    Yes, I did.
Q.    Okay, And did you feel like that was in the best interest of your children?
A.    Yes.
Q.    Was it a hard decision to make?
A.    Yes.

The father testified similarly to the mother indicating that he believed terminating his parental rights was in the best interest of his children. When the trial court asked whether she had any other testimony, the mother responded to the court, "I really didn't want to do this." Thereafter the following discussion took place between the mother, the trial court, and the mother's trial counsel:

THE COURT:    Okay. I understand, ma'am. It's very difficult.

[C.H.]:    No, I don't. I don't.

THE COURT:    Do you want to undo it?

[C.H.]    I don't know if I - - I don't - - I just want my children to have a better life than what I can provide them.

THE COURT:    Okay.

        . . . .

[COUNSEL]:    And that's why -- that's why, even though it was a hard decision, we talked about all the pros and cons of a trial, pros and cons of signing relinquishment, what a termination - - that they could use a termination to take away a possible unborn child or children that you'll have in the future. Did we talk about that?

[C.H.]:    Yes.

4

[COUNSEL]:        And you base this very hard decision on all that, right?

[C.H.]:        Yes.

[COUNSEL]:        So, it's hard for you - - it's hard for you this morning to say this is what you want to do 'cause it's not what you want to do in your heart, right?

[C.H.]:        Neither one, my heart or my mind. I don't want to do it.

[COUNSEL]:        Well, I know you don't want to do it; but you just said that you're only doing it because you want to give your children a better life.

[C.H.]:        Yes.

[COUNSEL]:        Is that correct?

[C.H.]:        (Nods head up and down).

[COUNSEL]:        And that's why you signed it?

[C.H.]:        Yes.

The children's attorney ad litem then proceeded to question the mother. The mother testified that no one had promised her anything for signing the affidavit of relinquishment.  The mother testified that she met with the potential adoptive parent who indicated to the mother that she would like the mother to continue to be a part of the children's lives. The mother testified that she very much wanted to continue to be part of the children's lives. When the ad litem asked if anyone had

5

forced them to sign the documents, the mother responded that she did not know how to answer the question. She testified that she felt like the world was against her. The mother again reiterated that she did not want to relinquish her rights. At this point in the testimony, the ad litem asked the mother if she wanted to take back what she had signed. The mother responded unequivocally, "No." The following testimony then took place:

> [AD LITEM]: There's been a lot of thought and, I'm sure, prayer gone into this; is that correct?
>
> [C.H.]: Yes. And that's why I think this is the best thing for my children.
>
> [AD LITEM]: And that's what the judge needs to know, that, yes, you truly believe in your heart that this is in your children's best interest.
>
> [C.H.]: Yes.
>
> [AD LITEM]: Are you asking him to accept the affidavit to relinquish that you signed?
>
> [C.H.]: Yes.

The trial court then stated, "I understand it's very difficult but, from what I just heard you say, it's not something you want to do but it appears to me that both of you are asking me to go ahead and accept these affidavits of relinquishment [because] you think it's best for your children." According to the record, the mother nodded her head up and down in response to the trial court's statement.

6

The trial court found the mother's and the father's parental rights should be terminated because both had executed irrevocable affidavits of relinquishment of their parental rights. The trial court found that termination was in the best interest of the children.

Approximately two weeks after the trial court terminated their parental rights, the mother and the father filed a joint motion for new trial. In their motion, they argued that a new trial should be granted because the evidence is legally and factually insufficient to support the judgment and the court's findings are against the overwhelming weight of the evidence. The trial court denied the mother and the father's motion for new trial. This appeal followed.

## II. Legal and Factual Sufficiency Challenges

### A. Standard of Review

Termination of parental rights requires proof by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001. Clear and convincing evidence is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. Because of the elevated burden of proof in parental termination cases, the traditional legal and factual sufficiency standards are inadequate. *In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002). In reviewing the

7

legal sufficiency in a parental rights termination case, the reviewing court "should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* However, we are not required to disregard all evidence that does not support the finding. *Id.* If we find that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

In reviewing the factual sufficiency in a parental termination case, the reviewing court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* The question we must answer is "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). In our determination, we should consider whether a reasonable factfinder could resolve the disputed evidence in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a

8

factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. In our review, we must be careful to "provide due deference to the decisions of the factfinder, who, having full opportunity to observe [the] witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

## B. Preservation of Error

In their first issue, appellants argue that the evidence is legally and factually insufficient to support the termination of their parental rights under section 161.001(1)(K) because the affidavits do not contain all the mandatory language required under section 161.103 to make the affidavits valid. The Department contends that appellants failed to preserve this issue for review. Because this is an appeal from a bench trial, the mother and father are not required to preserve their legal and factual sufficiency complaints for appeal. *See* Tex. R. App. P. 33.1(d); *see also In re M.L.B.*, 269 S.W.3d 757, 761 (Tex. App.—Beaumont 2008, no pet.); *In re K.M.H.*, 181 S.W.3d 1, 7 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

## C. Compliance with Texas Family Code § 161.103

The mother and the father complain that the affidavits are invalid for deficiencies under section 161.103 for not containing their ages, their county of

residence, and the children's ages. However, these challenges are proscribed by the Family Code. A trial court may terminate the parent-child relationship if it finds by clear and convincing evidence that the parent has executed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by the Family Code and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(1)(K), (2). The party seeking termination has the burden to prove the elements necessary to support termination of the parent-child relationship. *In re K.M.L.*, 443 S.W.3d 101, 113 (Tex. 2014); *see also Moore v. Brown*, 408 S.W.3d 423, 437 (Tex. App.—Austin 2013, pet. denied).

Section 161.103 of the Family Code lists the requirements for an affidavit of voluntary relinquishment of parental rights. *See* Tex. Fam. Code Ann. § 161.103 (West 2014). Evidence that an affidavit of voluntary relinquishment was signed, notarized, witnessed, and executed in compliance with section 161.103 of the Family Code is prima facie evidence of its validity. *In re D.R.L.M.*, 84 S.W.3d 281, 296 (Tex. App.—Fort Worth 2002, pet. denied).

Section 161.211(c) of the Family Code limits any direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights to issues relating to fraud, duress, or coercion in the execution of the affidavit. *See* Tex. Fam. Code Ann. § 161.211(c) (West 2014).

Because the statute applies without limitation to both direct and collateral attacks, the plain language suggests that subsection (c) should be interpreted as having "sweeping, all-encompassing breadth, applying to complaints of everything from procedural errors to jurisdiction defects." *Moore*, 408 S.W.3d at 435. "[S]ubsection (c)'s reference to 'issues relating to fraud, duress, or coercion in the execution of the affidavit' denotes a category of complaints that is distinct from, and is preceded by, the question of whether the affidavit complies with all of the requirements of section 161.103." *Id.* at 437. While section 161.103's requirements may serve as prophylactic safeguards calculated to ensure the voluntariness of execution, they are not the same as fraud, duress, and coercion, and are not in and of themselves determinative of whether an affidavit was voluntarily executed. *Id.* at 437-38. Therefore, challenges to deficiencies in the affidavits are precluded under section 161.211(c). *See Moore*, 408 S.W.3d at 426, 438; *see also In re C.O.G.,* No. 13-12-00577-CV, 2013 WL 6583971, at *4 (Tex. App.—Corpus Christi Dec. 12, 2013, no pet.) (mem. op.).

In *Moore*, the biological parents sought to set aside the order terminating their parental rights and the adoption of their biological child through a bill of review. 408 S.W.3d at 426. The parents' central contention was that their affidavits of relinquishment were executed within forty-eight hours of the child's birth and

11

thus failed to comply with the forty-eight hour waiting period set forth in section 161.103(a)(1). *Id*. at 433. The parents argued that section 161.211's limitations were not applicable to their case because the statute only applied to persons who had executed an affidavit of relinquishment of parental rights. *Id*. at 434-35. They argued that because their affidavits did not comply with the mandatory requirements under section 161.103, the affidavits were void and, consequently, nonexistent. *Id*. at 434. In rejecting the biological parents' argument, the Austin Court pointed out that the parents' argument rested upon a critical predicate assumption—that they could re-litigate the issue of whether the affidavits of relinquishment were executed in compliance with section 161.103 after the trial court had already determined that the affidavits complied with the statute. *Id*. at 435. The court explained that the trial court's order was final and binding unless the biological parents could succeed in having it set aside through a collateral or direct attack, which the court ultimately found was foreclosed by section 161.211(c). *Id*. at 435, 438.

In *C.O.G.*, the biological parents sought to set aside an order of termination by arguing that the affidavits were not valid because they were not witnessed by two credible persons as required by section 161.103 of the Family Code. 2013 WL 6583971, at *1. Relying upon the holding in *Moore,* the Corpus Christi Court held

that a complaint based solely on noncompliance with a single requirement of section of 161.103 is proscribed by section 161.211(c) of the Family Code. *Id*. at *4.

The reasoning in *Moore* and *C.O.G.* is applicable to this case. The termination order in this case is "an order terminating parental rights" under chapter 161 of the Family Code. *See* Tex. Fam. Code Ann. § 161.206 (West 2014). The trial court's order is also "based upon" the mother's and the father's affidavits of relinquishment, which were made irrevocable under Family Code section 161.103 and were thus "unrevoked." *See id*. § 161.103(e). Thus, the only allowable issues that the mother and the father may bring regarding the termination order are "issues relating to fraud, duress, or coercion in the execution of the affidavit[s]." *See id*. § 161.211(c). The challenges the mother and the father assert regarding deficiencies in the affidavits clearly do not fall within this narrow category. *See id.*; *see also In re A.H.*, 414 S.W.3d 802, 805-06 (Tex. App.—San Antonio 2013, no pet.); *Moore*, 408 S.W.3d at 438. We overrule the mother and father's first issue.

In their second issue, appellants argue that the evidentiary grounds presented at trial were legally and factually insufficient to support the trial court's implied finding that the affidavits of voluntary relinquishment were knowingly and voluntarily executed. Appellants essentially complain that the affidavits'

13

noncompliance with section 161.103 rendered the affidavits invalid and therefore insufficient to support the trial court's judgment. Specifically, appellants argue that the affidavits' noncompliance with section 161.103 precludes the trial court's implied finding that the affidavits were voluntarily executed. To the extent appellants base their voluntariness challenge on the affidavits' alleged noncompliance with section 161.103, we have addressed that argument above and have found it to be without merit.

The father does not provide any evidence or argument in his brief that he involuntarily executed his relinquishment affidavit because of fraud, duress, or coercion. In fact, at the motion for new trial hearing, the father asserted that he signed the affidavit of relinquishment because the mother signed the affidavit. As the father bases his voluntariness challenge solely on his affidavit's alleged noncompliance with section 161.103, we overrule his second issue.

The mother likewise asserts this as a basis to support her legal and factual sufficiency challenge in her brief. We overrule her second issue in part as it relates to her legal and factual sufficiency challenges.

### III. Denial of Motion for New Trial

In addition to the statutory compliance argument addressed above, the mother contends she "blacked out and does not remember[]" executing the

14

relinquishment affidavit or attending and testifying at the termination hearing. Thus, she concludes she "could not [have] knowingly and voluntarily execute[d] the affidavit." The mother first made this argument to the trial court during the hearing on her motion for new trial. The mother essentially presented newly discovered evidence—her testimony that she blacked out while signing the affidavit—to the trial court in order to have her affidavit of relinquishment set aside. Thus, we construe this part of her argument as a challenge to the trial court's denial of her motion for new trial and rejection of her argument that her affidavit of relinquishment was involuntary. We review a trial court's denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006). We will conclude the trial court abused its discretion if it acted without reference to any guiding rules or principles or in an arbitrary and unreasonable manner. *In re C.D.S.*, 172 S.W.3d 179, 184 (Tex. App.—Fort Worth 2005, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)).

After the Department has demonstrated that it complied with the requirements of section 161.103, the party opposing the affidavit, here the mother, must prove, "by a preponderance of the evidence," that the affidavit "was executed as a result of fraud, duress, or coercion" for the trial court to set aside the affidavit. *See In re D.E.H.*, 301 S.W.3d 825, 830 (Tex. App.—Fort Worth 2009, pet. denied)

15

(en banc); *see also In re A.C.*, No. 12-14-00122-CV, 2014 WL 6803987, at *4 (Tex. App.—Tyler Oct. 22, 2014, no pet.) (mem. op.); *In re C.E.*, No. 02-14-00054-CV, 2014 WL 3866159, at *5 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.); *S.H. v. Tex. Dep't of Family & Protective Servs.*, No. 03-13-00151-CV, 2013 WL 3013874, at *2 (Tex. App.—Austin June 12, 2013, no pet.); *In re C.L.*, No. 10-11-00228-CV, 2011 WL 5830472, at *2 (Tex. App.—Waco Nov. 16, 2011, no pet.).

"Fraud may be committed through active misrepresentation or passive silence and is an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another or the taking of an undue and unconscientious advantage." *D.E.H.*, 301 S.W.3d at 829. A person shows duress when, because of some kind of threat, a person is incapable of exercising her free agency and unable to withhold consent. *Id.* Coercion occurs if a person is compelled to perform an act by force or threat. *Id.* at 828.

The mother testified at the motion for new trial hearing that on June 10 she spoke to her attorney about the possibility of signing an affidavit of relinquishment. She recalled that they discussed the affidavit of relinquishment's purpose and the consequences it carries. The mother testified that they decided she

16

and the father would think about relinquishing their rights and would return the following week.

The mother testified that she recalled coming to the courthouse on June 17 for the final hearing. She also recalled speaking to her attorney on that day. However, she testified that she did not remember appearing in the courtroom that day or answering any of the judge's questions. The mother explained that she could not remember because she had "blacked out" the day of the final hearing. The mother testified, "the only thing I remember is being at the courthouse, somebody showing me a piece of paper saying, 'Sign it. Sign it. Sign it. Sign it.' After that, I don't know what the rest --[.]" According to the mother, the only thing she remembers is being told to sign a piece of paper.

The mother testified that when she blacked out, she did not fall down or close her eyes. She testified that she did not remember losing consciousness. She testified that this was the first time she had ever blacked out, and that she has not blacked out since. She testified that she did not seek medical attention, and she had not taken any drugs or consumed alcohol on that day. When asked whether she had any other signs of impairment that day, the mother responded, "[w]henever somebody told me -- whoever told me to sign the piece of paper, I felt -- I was -- I would try -- I felt like it was -- like emotion, stress." She did not recall J.H. signing

17

an affidavit of relinquishment either. She recalled that at some point later, J.H. told her what had happened and then she called her attorney and told her attorney that she "wanted to take back what [she] had done[.]"

The mother testified that she had previously relinquished her parental rights to another child not the subject of this case. She admitted that she understood what she was doing at that time. After the completion of the mother's testimony, the father apparently indicated to his trial counsel that he did not wish to take the stand to testify.

The C.P.S. supervisor in charge of this case testified that she was present when the mother and the father signed their affidavits of relinquishment. She testified that she saw no evidence that the mother had blacked out. She testified that she observed no behaviors that were abnormal for the mother or the father. The C.P.S. supervisor testified that the mother appeared to know what she was doing and to understand the function of an affidavit of relinquishment. According to the C.P.S. supervisor, the mother was represented and advised by an attorney and she had a chance to meet with the children's attorney ad litem. The C.P.S. supervisor testified that no one that had observed the mother that day reported seeing any signs that prompted a concern that she was not cognizant. The C.P.S. supervisor stated that the mother "was very specific on what she wanted us to do

18

within the case." The mother wanted the agency to make a certain placement with a specific foster family that was interested in all three children. The mother had also contacted her counselor before the hearing and informed her counselor, "'I don't need to come to counseling anymore because I'm going to relinquish[.]'" The C.P.S. supervisor testified that the mother's behavior and her history with relinquishment procedures indicated that the mother knew what she was doing in signing the affidavit.

The CASA supervisor for this case also testified that she observed the same factors identified by the C.P.S. supervisor that made her likewise believe that the mother knew and understood what she was doing when she signed the affidavit of relinquishment. The CASA supervisor testified that she did not observe anything that would lead her to believe that the mother was not aware of her surroundings that day or had in some way blacked out. Furthermore, she spoke to the mother beforehand and explained the relinquishment process. She believed that the mother understood that when she signed the affidavit of relinquishment it was irrevocable.

The mother never used the terms fraud, duress, or coercion in her motion for new trial. The mother did not claim that she was fraudulently induced into signing the affidavit, that she was under duress, or that she was coerced into signing the affidavit. During her testimony, the mother did not describe any circumstances to

19

support any allegation of duress, coercion, or fraud. The record shows that the mother was represented by counsel when she signed the affidavit of relinquishment and during the termination hearing. We have no doubt that the mother may have been emotionally upset and under stress when she signed the affidavit of relinquishment. However, a parent feeling pressured or being emotional or upset when signing the affidavit does not render the affidavit involuntary. *See D.E.H.*, 301 S.W.3d at 830 (holding that mother's showing that her uncertainty, confusion, and anguish over her limited options created a feeling that she was pressured into signing affidavit did not demonstrate that she executed the affidavit as a result of coercion, fraud, or duress); *In re R.B.*, 225 S.W.3d 798, 805-06 (Tex. App.—Fort Worth 2007, no pet.) (stating parents acted voluntarily and without duress, fraud, or coercion in executing their affidavits even though evidence supported that they were emotionally distressed and had been placed under "considerable pressure"); *In re N.P.T.*, 169 S.W.3d 677, 679-81 (Tex. App.—Dallas 2005, pet. denied) (concluding father acted voluntarily when he signed the affidavit of relinquishment as part of a plea bargain agreement even though evidence showed that father was under pressure to make a decision); *see also Lumbis v. Tex. Dep't of Protective & Regulatory Servs.*, 65 S.W.3d 844, 851 (Tex. App.—Austin 2002, pet. denied) (indicating that the fact that a parent is emotionally upset when signing the

20

affidavit of relinquishment does not render the affidavit involuntary). With regard to the mother's testimony that she blacked out and does not recall signing the affidavit, we conclude this testimony fell within the court's discretion to disregard, especially in light of the testimony by all other witnesses to the execution of the affidavit and subsequent hearing that saw no evidence of the mother's allegation. *See Shull v. United Parcel Serv.*, 4 S.W.3d 46, 51 (Tex. App.—San Antonio 1999, pet. denied) (quoting *Hanners v. State Bar of Tex.*, 860 S.W.2d 903, 908 (Tex. App.—Dallas 1993, writ dism'd) ("'The trial court serves as fact finder at a hearing on a motion for new trial and, accordingly, is the sole judge of the witnesses' credibility.'")).

We conclude C.H. did not prove fraud, duress, or coercion by a preponderance of the evidence, and she therefore did not prove that her affidavit of relinquishment was involuntarily executed. Accordingly, the trial court did not abuse its discretion by denying C.H.'s motion for new trial. We overrule C.H. second issue.

Having overruled all of C.H.'s and J.H.'s issues on appeal, we affirm the trial court's judgment.

21

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on September 15, 2014
Opinion Delivered December 18, 2014

Before Kreger, Horton, and Johnson, JJ.